OPINION OF THE COURT
 

 Simons, J.
 

 Petitioner challenges the legality of amendments to the Town of Sardinia’s Zoning Ordinance which eliminated mining as a permitted use throughout the Town. The principal issues
 
 *675
 
 presented are whether: (1) the Town violated various statutory provisions relating to referral and public notice of the amendments when it enacted some but not all of the amendments that were proposed; (2) the New York State Mined Land Reclamation Law supersedes the Town’s authority to amend its Zoning Ordinance in a manner that eliminates mining as a permitted use throughout the Town; and (3) the Town’s action constituted impermissible exclusionary zoning. Also presented are secondary issues regarding the Town’s compliance with procedures mandated by the State Environmental Quality Review Act (SEQRA) and the open meetings provisions of the Public Officers Law.
 

 The Town of Sardinia is a small rural community located in western New York. Farming is the economic mainstay but it is rich in deposits of extractable minerals. Eight mines, covering over 600 acres, are presently located within the Town. These mining uses were lawful under the Town Zoning Ordinance adopted in 1969, which permitted mining in all R-A districts and, by incorporation, in all other districts in the Town. Town Board approval of a mining site was required, however, and approval was conditioned on consideration of the possible nuisance to neighbors of the proposed site and the miner’s plan to restore the land after mining operations ceased.
 

 Petitioner Gernatt has conducted mining operations at several sites within the Town for many years and presently owns three operating mines. In 1989, it acquired a 400-acre parcel of land known as the Gabel Thomas property. It has applied to the Department of Environmental Conservation (DEC) for the necessary State permit to mine the site but has not yet received one. Following petitioner’s purchase of the Gabel Thomas site, the Town became concerned about the effect its development might have on this rural community, and took a number of steps to regulate the expansion of mining within its borders.
 

 This litigation focuses on three ordinances introduced by the Town Board at its meeting August 18, 1993. The first two were adopted. Section 6.02 (A) (5) of the existing Zoning Ordinance made quarries, clay, sand and gravel pits permitted uses in R-A districts, and the first ordinance adopted at the August meeting repealed that section. The second ordinance repealed section 7.07 which required approval of the Town Board to excavate. The third proposal, which designated quarries, clay, sand and gravel pits as specially permitted uses but only at sites currently authorized by DEC, was tabled for further study.
 

 It is important to note three points about the Town’s actions and the three proposed amendments: (1) the amendments as
 
 *676
 
 enacted did not
 
 prohibit
 
 or terminate existing mining operations throughout the Town — they continued as lawful, but nonconforming uses; (2) the only functional difference between the amendments as proposed and as enacted is the legal status of currently operating mines: while mining on existing sites is now a nonconforming use under the Town’s Zoning Ordinance, had the amendments been adopted as proposed mining on existing sites would have been a specially permitted use;
 
 [1]
 
 and (3) even if all three proposed amendments had been enacted,
 
 new
 
 mining would not have been permitted in the Town, because proposed section 7.07 authorized special permits only for mining sites permitted by the DEC at the time the legislation was enacted.
 

 Petitioner instituted this special proceeding seeking to annul the Board’s adoption of the "repealer” amendments and to enjoin the Town from enforcing the nonconforming use provision of its Zoning Ordinance. It asserted nine causes of action and several grounds of illegality. Converting the proceeding to an action for declaratory judgment, Supreme Court rejected each of petitioner’s claims and declared that the amendments had been validly enacted. On appeal, the Appellate Division concluded that because the amendments as adopted were different from the amendments as proposed, the notice and referral requirements of the Town Law, the General Municipal Law and Sardinia Town Ordinance § 12.01 were not satisfied. The Court further held that the adopted amendments were inconsistent with and preempted by the New York State Mined Land
 
 *677
 
 Reclamation Law, that the Town had engaged in unconstitutional exclusionary zoning and that the amendments had not been enacted in accordance with a comprehensive plan. The Appellate Division determined further that petitioner had standing to challenge the amendments as violative of SEQRA and that the Town had failed to comply with SEQRA, and it also concluded that the Town violated the Open Meetings Law.
 

 We consider each of these grounds separately and, for the reasons that follow, we reverse the order of the Appellate Division.
 

 I. Notice and Referral Requirements
 

 Town Law § 264 (1) and § 265 (1) require a town board to give the public at least 10 days’ notice of the time and place of the public hearing at which proposed amendments to a local zoning ordinance will be discussed so that those interested in the amendments may attend and participate in the hearing. To facilitate regional review of amendments to a local zoning ordinance, General Municipal Law § 239-m requires the local municipality to refer its proposed amendments to the county planning board. In addition, the Town of Sardinia Zoning Ordinance requires the Town Board to submit any proposed amendments to the Town Planning Board for its report and recommendation. Petitioner contends that the Town Board failed to comply with each of these notice and referral provisions.
 

 After notifying abutting municipalities and publishing notice of the public hearing regarding the proposed amendments, and referring the proposed amendments to the Erie County Department of Environment and Planning, which responded with "no recommendation,” and the Town Planning Board, which recommended adoption of the amendments, a public hearing and Town Board meeting were held on August 18, 1993. The hearing was well attended and lively, with substantial opposition to the amendments voiced by petitioner’s representatives and others with interests in the mining industry and support for the legislation voiced by several residents of the community.
 

 After the hearing ended, the Town Board convened its meeting to consider the proposed amendments. In light of comments made during the public hearing, Town Counsel suggested that the Board move into executive session. When the Board emerged from the executive session some 25 minutes
 
 *678
 
 later, the Town Supervisor announced that they had discussed "current and potential litigation.” Counsel then recommended that the Board adopt the first two of the proposed zoning amendments (those repealing section 6.02 [A] [5] and 7.07) and table consideration of proposed section 7.07 establishing mining as a specially permitted use. The Board did so. To date, proposed section 7.07 has not been adopted by the Sardinia Town Board.
 

 Petitioner’s position is that the Town Board was required to enact either all or none of the three proposed amendments included in the public notice, or to renotice and rerefer the proposed amendments once it had determined to enact only two of them. It does not allege any procedural noncompliance with the notice or referral provisions, but contends that the substance of the notice and referrals actually given by the Town Board was inadequate because the recipients were alerted only that mining was to be changed from a permitted use throughout the Town to a specially permitted use, not that it would become a nonconforming use.
 
 [2]
 

 The public notice required by Town Law §§ 264 and 265 is notice of "the time and place” of the hearing in order that "the public shall have an opportunity to be heard” (Town Law § 264 [1];
 
 see also,
 
 Town Law § 130 [notice of action upon local ordinances must "in general terms describ(e) the proposed ordinance”]). The sufficiency of the notice is tested by whether it fairly apprises the public of the fundamental character of the proposed zoning change. It should not mislead interested parties into foregoing attendance at the public hearing
 
 (see generally,
 
 1 Rathkopf, Zoning and Planning § 10.04).
 

 A notice that describes the proposed change with reasonable precision will satisfy these purposes of the notice requirement
 
 (see, Coutant v Town of Poughkeepsie,
 
 69 AD2d 506, 510-512;
 
 cf., Matter of Gardiner v Lo Grande,
 
 92 AD2d 611,
 
 affd on other grounds
 
 60 NY2d 673). When events subsequent to the publication of notice lead to an amendment that is substantially different from that which was noticed, new notice and opportunity to be heard may be required
 
 (Village of Mill Neck v Nolan, 259
 
 NY 596;
 
 see, e.g., Callanan Rd. Improvement Co. v
 
 
 *679
 

 Town of Newburgh,
 
 6 Misc 2d 1071,
 
 affd,
 
 5 AD2d 1003). However, where the amendment as adopted is embraced within the public notice, the notice has satisfied its purpose of alerting the public to potential and contemplated revisions of the local ordinance, and the notice will generally be deemed sufficient (see,
 
 Lighthouse Shores v Town of Islip,
 
 41 NY2d 7, 10-11).
 

 The Town Clerk published the following notice of the time and place of the public hearing:
 

 "for the purpose of hearing comments on proposed amendments to the Zoning Ordinance of the Town of Sardinia. Said amendments would delete Section 6.02 A.5 and Section 7.07 of the Zoning Ordinance, and would create a new Section 7.07, entitled 'Special Use Permits for Certain Mines.’ The deletion of Section 6.02 A.5 would eliminate mining as a permitted use anywhere within the Town of Sardinia. The new Section 7.07 would designate those mines permitted by the New York State Mined Land Reclamation Law and in operation at the time of adoption of the new Section 7.07 of the Zoning Ordinance as a permissible use in the district within which they lie.”
 

 The notice briefly described the proposed new section 7.07, advised that copies of the entire text of the proposed amendments were available, and invited submission of written as well as public comment at the hearing. It clearly advised the public that three separate though related amendments were contemplated. The public was advised that the repealer provisions "would eliminate mining as a permitted use anywhere within the Town of Sardinia” and that the special permit provision "would designate those mines * * * in operation at the time of adoption of the new Section 7.07 * * * as a permissible use in the district within which they lie.” The announcement clearly included notice of the repealer provisions subsequently enacted and there was nothing inaccurate or misleading about it. That petitioner interpreted the publication as an all-or-nothing proposal, and prepared and directed its comments and objections exclusively to the adoption of the special permit provision and not the repealer provisions, cannot be blamed on any deficiency in the published notice.
 

 Similarly, the referrals to the County Board and the Town Planning Board were sufficient. General Municipal Law § 239-Z states the purpose of referral to the county planning board: to
 
 *680
 
 permit its review of and recommendation on the proposed action "as an aid in coordinating such zoning actions and planning among municipalities by bringing pertinent inter-community and county-wide considerations to the attention” of the municipality that is considering the action. A similar but narrower purpose may be attributed to the local ordinance requiring referral to the Town Planning Board — to permit its consideration of and recommendations regarding municipal planning issues that may not otherwise come to the attention of the Town Board.
 

 The County and Town Planning Boards received notice of the three proposed amendments in this case. Thus, it cannot be said that the Town failed to refer the matter as required by statute
 
 (compare, Matter of Ferrari v Town of Penfield Planning Bd.,
 
 181 AD2d 149). Moreover, the Planning Boards were clearly notified that the effect of the amendments, both as proposed and as enacted, was to limit mining operations in the Town to currently existing mining sites.
 

 The only functional difference between the amendments as proposed and as enacted related to the legal status of the use of currently operating mine sites. While the legal status of the existing mine sites was significant to the landowner and the Town Board, it was of little relevance to traffic, population density, community appearance and facilities, and other matters within the domain and concern of the Planning Boards
 
 (see,
 
 General Municipal Law §
 
 239-l).
 
 Accordingly, having referred the proposed amendments to the Planning Boards as required by General Municipal Law § 239-m and Sardinia Zoning Ordinance § 12.01, the action by the Town Board in adopting only the repealer provisions did not render those referrals defective.
 

 II. The Mined Land Reclamation Law
 

 The Mined Land Reclamation Law (ECL 23-2701
 
 et seq.
 
 [the MLRL]) is a comprehensive legislative scheme which broadly empowers the Department of Environmental Conservation to regulate the mining industry in this State. The policies underlying the statute are to foster and encourage an economically sound and stable mining and minerals industry, to manage well depletable mineral resources, and to provide for the reclamation of mined land
 
 (see,
 
 ECL 23-2703 [1] [as originally enacted, L 1974, ch 1043, and as amended, L 1991, ch 166]). The Legislature sought to achieve those purposes by replacing the existing patchwork of local regulatory ordinances with
 
 *681
 
 "standard and uniform restrictions and regulations” and by addressing the environmental issues related to reclamation of abandoned mining sites
 
 (Matter of Frew Run Gravel Prods. v Town of Carroll,
 
 71 NY2d 126, 131-133). As originally enacted, the provisions of the statute expressly superseded "all other state and local laws relating to the extractive mining industry * * * [except] local zoning ordinances or other local laws which impose stricter mined land reclamation standards or requirements than those found herein” (ECL 23-2703 [former (2)]).
 

 In
 
 Frew Run,
 
 we addressed whether the MLRL preempted a municipality’s zoning ordinance when the DEC had issued a permit to operate a sand and gravel mine at a site that lay within a zoning district in which mining was not a permitted use. We noted that under the MLRL, the preemption question was one of statutory construction, not a search for implied preemption, because the Legislature included within the MLRL an express supersession clause. We concluded that the MLRL did not preempt the local zoning ordinance which limited mining activities to certain zoned districts
 
 (see, Matter of Frew Run,
 
 71 NY2d, at 130-131,
 
 supra).
 

 The supersession clause of the MLRL has since been amended
 
 (see,
 
 ECL 23-2703 [2], amended by L 1991, ch 166, § 228), and the question is whether the amendments to the Zoning Ordinance of the Town of Sardinia which eliminated mining as a permitted use in
 
 all
 
 zoning districts are preempted by the Mined Land Reclamation Law. Relying on the amendment to the MLRL as a restatement of the policy in favor of fostering and promoting the mining industry in this State, and contending that our holding in
 
 Frew Run
 
 leaves municipalities with the limited authority to determine in
 
 which
 
 zoning districts mining may be conducted but not the authority to prohibit mining in
 
 all
 
 zoning districts, petitioner contends that the "repealer provisions” enacted by the Town of Sardinia are invalid because they are preempted by the Mined Land Reclamation Law. Neither the Mined Land Reclamation Law as amended nor the holding in
 
 Frew Run
 
 leads to that conclusion.
 

 In
 
 Frew Run,
 
 we distinguished between zoning ordinances and local ordinances that directly regulate mining activities. Zoning ordinances, we noted, have the purpose of regulating land use generally. Notwithstanding the incidental effect of local land use laws upon the extractive mining industry, zoning ordinances are not the
 
 type
 
 of regulatory provision the Legislature foresaw as preempted by Mined Land Reclamation
 
 *682
 
 Law; the distinction is between ordinances that regulate property uses and ordinances that regulate mining activities
 
 (see, Matter of Frew Run,
 
 71 NY2d, at 131,
 
 supra; see also, Matter of Hunt Bros. v Glennon,
 
 81 NY2d 906;
 
 compare, Matter of Briarcliff Assocs. v Town of Cortlandt,
 
 144 AD2d 457,
 
 lv denied
 
 74 NY2d 611;
 
 Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation,
 
 113 AD2d 62,
 
 lv denied
 
 68 NY2d 612). In
 
 Frew Run,
 
 we concluded that nothing in the plain language, statutory scheme, or legislative purpose of the Mined Land Reclamation Law suggested that its reach "was intended to be broader than necessary to preempt
 
 conflicting regulations dealing with mining operations and reclamation of mined
 
 lands”
 
 (id.,
 
 at 133 [emphasis added]), and that in the absence of a clear expression of legislative intent to preempt local control over land use, the statute could not be read as preempting local zoning authority.
 

 The express supersession provision of the MLRL (ECL 23-2703), was amended in 1991. It now provides:
 

 "For the purposes stated herein, this title shall supersede all other state and local laws relating to the extractive mining industry; provided, however, that nothing in this title shall be construed to prevent any local government from * * * enacting or enforcing local zoning ordinances or laws which determine permissible uses in zoning districts” (ECL 23-2703 [2] [b]).
 

 The patent purpose of the 1991 amendment was to withdraw from municipalities the authority to enact local laws imposing land reclamation standards that were stricter than the Statewide standards under the MLRL. The language of this amended provision accords with the distinction drawn in
 
 Frew Run
 
 between zoning ordinances and local ordinances that regulate mining activities, and there is nothing in the sparse legislative history of the amendment to the statute suggesting that the Legislature intended the MLRL to go further and limit municipalities’ broad authority to govern land use.
 

 Petitioner contends that the amendments to the Zoning Ordinance prohibit mining throughout the Town. In its view the amendments necessarily regulate mining and are therefore preempted by the MLRL because they conflict with the statute’s stated purpose of fostering the mining industry in this State. It relies on this Court’s observation in
 
 Frew Run
 
 that while the Town of Carroll prohibited mining in one
 
 *683
 
 district, it allowed mining by special permit in another. At bottom, petitioner’s argument is that if the land within the municipality contains extractable minerals, the statute obliges the municipality to permit them to be mined somewhere within the municipality.
 

 Nothing in the MLRL imposes that obligation on municipalities, nor has the Legislature broadened the preemptive reach of the statute to restrict municipal authority to regulate permissible uses of land within the municipality. Rather, in amending ECL 23-2703 in 1991, the Legislature expressly excluded that authority from its preemptive reach. Thus, we conclude that the MLRL does not preempt the Town’s authority to determine that mining should not be a permitted use of land within the Town, and to enact amendments to the local zoning ordinance in accordance with that determination.
 

 III. Exclusionary Zoning
 

 A.
 

 The challenged amendments to the Sardinia Zoning Ordinance eliminate mining as a permitted use in the Town. Seizing upon this fact and its exclusionary appearance, petitioner contends that the amendments are unconstitutional under our decision in
 
 Berenson v Town of New Castle
 
 (38 NY2d 102).
 

 Berenson
 
 involved an attack on an ordinance which prevented the construction of multifamily residences upon open and undeveloped land within the Town of New Castle at a time when no multifamily residences existed there. The primary goal of a zoning ordinance, we said, is to provide for the development of a balanced, cohesive community which will make efficient use of the Town’s available land. Thus, a community must consider regional needs and requirements when enacting a zoning ordinance. An ordinance shown to be enacted for an improper purpose or that has an exclusionary effect is invalid. A community may not use its police power to maintain the status quo by preventing members of lower and middle socioeconomic groups from establishing residency in the municipality
 
 (see, Berenson v Town of New Castle, supra; Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,
 
 51 NY2d 338, 345,
 
 cert denied
 
 450 US 1042;
 
 cf., Asian Ams. for Equality v Koch,
 
 72 NY2d 121, 134-135;
 
 see generally,
 
 1 Anderson, New York Zoning § 8.01
 
 et seq.).
 

 We have never held, however, that the
 
 Berenson
 
 test, which is intended to prevent a municipality from improperly using
 
 *684
 
 the zoning power to keep people out, also applies to prevent the exclusion of industrial uses. A municipality, is not obliged to permit the exploitation of any and all natural resources within the town as a permitted use if limiting that use is a reasonable exercise of its police powers to prevent damage to the rights of others and to promote the interests of the community as a whole
 
 (see generally, 4
 
 Rathkopf, Zoning and Planning § 54.01; 1 Anderson, New York Zoning § 9.11).
 

 Petitioner has two interests: to continue operating its existing mines in Sardinia and to develop its newly acquired Gabel Thomas site if it can obtain a DEC permit to do so. The amendments to the Zoning Ordinance did not prohibit it from operating its existing mines in Sardinia: they continue as lawful nonconforming uses. Thus, the test for exclusionary zoning articulated in
 
 Berenson,
 
 even if it applied to industrial uses, would not invalidate the Town’s action here because mining operations lawfully continue in the Town. Insofar as petitioner contends that the amendments prohibit the development of new mines, it has no vested right to have the existing zoning ordinance continue unchanged if the Town Board has rationally exercised its police power and determined that a change in the zoning was required for the well-being of the community
 
 (see, Matter of Khan v Zoning Bd of Appeals,
 
 87 NY2d 344;
 
 Rodgers v Village of Tarrytown,
 
 302 NY 115, 121).
 
 [3]
 

 On its face, the Town’s action in limiting mining activity to nonconforming use status on existing sites was lawful and nothing in the record suggests that it did, in fact, exclude that use or exercise its police powers to regulate mining for improper purposes.
 

 B.
 

 Nor do we agree that the Town’s action was invalid because it failed to meet the statutory requirement that municipal zoning must accord with a comprehensive plan
 
 (see, Udell v Haas,
 
 21 NY2d 463; Town Law § 263; Village Law § 7-704;
 
 see also,
 
 General City Law § 20 [25]).
 

 A "comprehensive plan” may be discerned from an examination of all evidence of the municipality’s land use policies. "Zoning legislation is tested not by whether it
 
 defines
 
 a well-considered plan, but by whether it
 
 accords
 
 with a well-
 
 *685
 
 considered plan for the community”
 
 (Asian Ams. for Equality v Koch,
 
 72 NY2d, at 131,
 
 supra
 
 [emphasis added]). The essential purpose of the requirement that rezoning be in accordance with a comprehensive plan is to guard against ad hoc zoning legislation affecting the land of a few without proper regard to the needs or design of the community as a whole (see,
 
 Town of Bedford v Village of Mount Kisco,
 
 33 NY2d 178, 187-188;
 
 Udell v Haas, supra; Thomas v Town of Bedford,
 
 11 NY2d 428). A municipality may change its zoning ordinance, however, to promote the general welfare and to respond to changed conditions in the community
 
 (see, Rodgers v Village of Tarrytown,
 
 302 NY, at 121-122,
 
 supra).
 
 The question is whether the change "conflict[s] with the fundamental land use policies and development plans of the community”
 
 (Udell v Haas,
 
 21 NY2d, at 472,
 
 supra; Asian Ams. for Equality v Koch, 72
 
 NY2d, at 131,
 
 supra).
 

 The amendments at issue in this case are, by their very nature, in accord with the comprehensive plan manifested in the Zoning Ordinance of the Town of Sardinia originally enacted. Its authorization of mining
 
 throughout the Town
 
 as a matter of right indicated that the Town in 1969 considered mining to be generally beneficial and consistent with the character and needs of the community. However, the record reveals that in 1993, the Town Board considered that some 600 acres of land within the Town were presently being mined and would continue to be mined, and that those operating sites could be expanded to their property boundaries as nonconforming uses (Zoning Ordinance § 8.07). The record further reveals that in enacting the amendments which prohibit further expansion of mining, the Town Board was responding to legitimate concerns created by its continued growth in the Town and the potential for major portions of the Town’s area to be devoted solely to mining operations. The Town Board noted the potential adverse effect of such growth upon the environment and the Town’s source of drinking water, upon the rural and agricultural economy and character of the Town, as well as the adverse impact of expanded mining on existing residences and future residential development. Moreover, because the Town removed mining as a permitted use throughout the municipality, it cannot be seriously contended that the Board acted irrationally or engaged in ad hoc zoning legislation
 
 (compare, e.g., Udell v Haas, supra; Walus v Millington,
 
 49 Misc 2d 104,
 
 affd sub nom. Walus v Gordon Realty Corp.,
 
 31 AD2d 777).
 

 Petitioner has proffered no argument to the Town Board, to the courts below, or to this Court suggesting that the curtail
 
 *686
 
 ment of growth of the mining industry was contrary to the general welfare of the community or the fundamental land use policies of the Town. In sum, petitioner failed to sustain its burden of demonstrating that the amendments to the Zoning Ordinance were not in accordance with a comprehensive plan.
 

 IV. The Open Meetings Law
 

 Petitioner alleged that during the special meeting held immediately after the public hearing on August 18, 1993, the Town Board went into an executive session during which it "drafted new legislation” — it describes the. legislation as the "NonConforming Use Amendments” — adopted after the Board emerged from the executive session. It alleges that respondents thereby violated the Open Meetings Law because the drafting of new legislation is not a statutorily authorized purpose for conducting an executive session (see, Public Officers Law § 103 [a]; § 105 [1]).
 

 In the answer to the petition, verified by a current Board member who attended the executive session, the Town asserted that discussion at the executive session was limited to obtaining legal opinions and advice from the Town’s Counsel about the adoption of the proposed amendments (not an unreasonable subject for discussion considering the threats advanced by petitioner and its adherents at the public hearing) and pending litigation by petitioner against the Town on a separate but related matter. Thus, the Town asserted as an affirmative defense Public Officers Law § 105 (1) (d), which defines "discussions regarding proposed, pending or current litigation” as a permissible purpose for an executive session.
 

 The purpose of the Open Meetings Law is to prevent municipal governments from debating and deciding in private what they are required to debate and decide in public
 
 (see, Matter of Gordon v Village of Monticello,
 
 87 NY2d 124, 126-127;
 
 Matter of Sciolino v Ryan,
 
 81 AD2d 475). Courts are empowered, "m
 
 their discretion and upon good cause shown,
 
 to declare void any action taken by a public body in violation of the mandate of this legislation”
 
 (Matter of New York Univ. v Whalen,
 
 46 NY2d 734, 735 [emphasis in original];
 
 see,
 
 Public Officers Law § 107 [1]). It is the challenger’s burden to show good cause warranting judicial relief
 
 (Matter of New York Univ. v Whalen,
 
 46 NY2d, at 735,
 
 supra).
 

 The contention of petitioner notwithstanding, respondents manifestly did not "draft new legislation” during the executive
 
 *687
 
 session. Following the executive session, the Board enacted two of the amendments proposed which were not new or different from the proposed amendments, and it tabled the remaining proposed amendment. Petitioner has failed to assert any fact controverting the Town’s sworn allegation that the executive session was conducted only for a permissible purpose under Public Officers Law § 105 (1) (d), and its allegation that respondent violated the Open Meetings Law is without merit.
 

 V. SEQRA
 

 Petitioner presents two issues related to respondents’ compliance with the State Environmental Quality Review Act: (1) whether petitioner has standing to challenge the Town Board’s compliance with SEQRA; and (2) whether the Town Board adequately conducted the required substantive review of the zoning legislation to support its negative declaration. We conclude that petitioner has standing to challenge respondents’ compliance, but the challenge is without merit.
 

 Generally, standing to challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute
 
 (see, Matter of Dairylea Coop. v Walkley,
 
 38 NY2d 6, 10). A nearby property owner may have standing to challenge a proposed zoning change because aggrievement may be inferred from proximity
 
 (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,
 
 69 NY2d 406, 413-414). The proximity alone permits an inference that the challenger possesses an interest different from other members of the community. Standing to raise a SEQRA claim involves this variation: a SEQRA challenger must "demonstrate that it will suffer an injury that is environmental and not solely economic in nature”
 
 (Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,
 
 76 NY2d 428, 433). However, where the challenge is to the SEQRA review undertaken as part of a zoning enactment, the owner of property that is the subject of rezoning need not allege the likelihood of environmental harm
 
 (Matter of Har Enters. v Town of Brookhaven,
 
 74 NY2d 524). In those circumstances, the "property owner has a legally cognizable interest in being assured that the town satisfied SEQRA before taking action to rezone its land”
 
 (id.,
 
 at 529;
 
 compare, Society of Plastics Indus. v County of Suffolk,
 
 77 NY2d 761).
 

 Petitioner has standing to challenge respondents’ compliance with SEQRA because it is the owner of a potential mining
 
 *688
 
 site it intends to operate in the future and which is affected by the amendments to the Town of Sardinia Zoning Ordinance removing new mining operations from the permitted uses within the Town.
 

 Petitioner challenges the Town Board’s review of the environmental effects of the amendments to the Zoning Ordinance on two grounds: that the Town Board’s completion of the Full Environmental Assessment Form, which provided the basis for the Town Board’s negative declaration and findings, was prepared with respect to the proposed "special permit” amendments, and thus the Town Board
 
 failed
 
 to conduct a SEQRA review with respect to the "nonconforming use amendments” that were ultimately adopted; and that even if the review undertaken is applicable to the amendments as adopted, the Town Board’s completion of the Assessment Form was accomplished in a hasty and therefore inadequate manner.
 

 A court’s authority to examine a SEQRA review conducted by an entity that was required to do so is limited to reviewing whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. The relevant question before the court is "whether the agency identified the relevant areas of environmental concern, took a 'hard look’ at them, and made a 'reasoned elaboration’ of the basis for its determination”
 
 (Matter of Jackson v New York State Urban Dev. Corp.,
 
 67 NY2d 400, 417;
 
 see, Matter of Chemical Specialties Mfrs. Assn. v Jorling,
 
 85 NY2d 382, 396-397;
 
 Chinese Staff & Workers Assn. v City of New York,
 
 68 NY2d 359, 363-364;
 
 see also, Matter of Niagara Recyling v Town Bd.,
 
 83 AD2d 335, 340-341,
 
 affd
 
 56 NY2d 859). While the judicial review must be genuine, "the agency’s substantive obligations under SEQRA must be viewed in light of a rule of reason” and the degree of detail with which each environmental factor must be discussed will necessarily vary and depend on the nature of the action under consideration
 
 (Matter of Jackson v New York State Urban Dev. Corp., supra,
 
 at 417). The potential environmental impact of a specifically proposed project, such as the construction of an industrial incinerator or landfill, may be entirely distinguishable from an amendment to a local zoning ordinance that limits an environmentally related land use, and thus the nature of the environmental impact assessment undertaken by the agencies in relation to such actions will be correspondingly different.
 

 The Environmental Assessment Form and negative declaration here were prepared by the Town Board with a view to
 
 *689
 
 ward adopting the "special permit” amendment. That does not, however, render respondents’ SEQRA review invalid with respect to the amendments that were enacted. The currently operating mines that became nonconforming uses under the adopted amendments were required to be operating under valid DEC permits. Pursuant to the proposed new section 7.07 to the Town Zoning Ordinance, the primary requirements of the application to the Town for a special permit were conditions designed merely to provide assurance to the Town that the applicant was in compliance with the requirements of the Mined Land Reclamation Law. Realistically then, the fact that the special permit provision was not enacted would not have any independent effect upon the environmental considerations raised under SEQRA, with one exception. The Town, under the proposed special permit provision, would be authorized to impose conditions related to ingress and egress to public thoroughfares and the routing of mineral transport vehicles over Town roads
 
 (see,
 
 proposed § 7.07 [E]), authority which is lacking under the Zoning Ordinance as it now exists. However, when completing the Environmental Assessment Form
 
 with respect to the special permit
 
 amendment, the Town Board concluded that that amendment to the Zoning Ordinance would have no effect on existing transportation systems in the Town. Thus, even in that aspect, the special permit amendment was no different from the Ordinance as it now exists. Accordingly, we conclude that the SEQRA review conducted with respect to the special permit amendment was equally applicable to the amendments as adopted.
 

 With respéct to the actual review of the Environmental Assessment Form, petitioner does not contend that the Town Board did not complete the form in relation to the proposed amendments to the Zoning Ordinance — the gravamen of its argument is that the review was conducted too quickly to be valid. The record reveals that at a work session of the full Town Board, it reviewed and answered all of the questions posed on the Full Environmental Assessment Form
 
 (see,
 
 6 NYCRR 617.21, Appendix A;
 
 see also,
 
 6 NYCRR 617.11). That the Board answered all the questions in the negative, and that it was able to do so quickly, does not establish that its review was inadequate as a matter of law.
 

 The record reflects that the Town Board identified the relevant areas of environmental concern as related to the proposed action, took the requisite "hard look” at them and in its negative declaration set forth a reasoned elaboration of the basis
 
 *690
 
 for its determination. Given the nature of the proposed action here, which would have only beneficial environmental effect, and the focus of the Assessment Form, which is to identify
 
 negative
 
 environmental effects of the proposed action, the Town Board’s rapid review and completion of the Environmental Assessment Form was not arbitrary or capricious.
 

 VI. Conclusions
 

 Respondent did not violate the various notice and referral requirements, because the amendments as adopted were a subset of the amendments as proposed, and the recipients of the notices and referrals were clearly so advised. The municipality’s authority to amend its Zoning Ordinance to eliminate mining as a permitted use in the municipality is not preempted by the Mined Land Reclamation Law, because that statute specifically exempts local zoning enactments from its preemptive reach. The Town of Sardinia did not engage in unconstitutional exclusionary zoning. The Town Board did not violate the Open Meetings Law because it did not draft new legislation during its executive session, and under the circumstances of this case, the Town Board’s SEQRA review was sufficient to withstand judicial scrutiny.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court, Erie County, reinstated.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . Specially permitted uses are uses which, though appropriate to a district, may be troublesome because of their nature. Though lawful, they are only authorized subject to such conditions as the zoning officers may impose (see, 2 Anderson, New York Zoning Law and Practice § 24.03). Under the Town’s proposed ordinance, mining would be a permitted use subject to annual approval: conditions could be imposed regarding the use of public thoroughfares, control of nuisance factors and the enforcement of reclamation permits issued by the State (see, proposed ordinance § 7.07 [E]; see
 
 also,
 
 ECL 23-2703 [2] [b]). Once an owner acquired a special permit, a mining operation could be conducted as of right.
 

 A nonconforming use is one which lawfully existed before a zoning ordinance has been adopted or amended to generally prohibit the use (see, 1 Anderson, New York Zoning Law and Practice § 6.06). Nonconforming uses, though lawful, are disfavored
 
 (see, e.g., Village of Valatie v Smith,
 
 83 NY2d 396, 400), and they continue subject to conditions. Under the Town of Sardinia Zoning Ordinance, a nonconforming use will be extinguished if discontinued for one year ( 8.02), and if the use is changed to a conforming use it may not revert to a nonconforming use ( 8.04). The nonconforming use may be extended to the boundaries of the same lot ( 8.05) but reconstruction or alteration of buildings devoted to the nonconforming use is limited ( 8.06).
 

 [2]
 

 .
 
 In furtherance of its arguments, petitioner has mischaracterized the enacted amendments as the "Nonconforming Use” or "Prohibition of Mining” amendments and the proposed amendments as the "Proposed Special Permit Amendments.” In this opinion, the adopted amendments will be referred to as the "repealer provisions” and the tabled amendment as the "special permit provision.”
 

 [3]
 

 . Arguably, petitioner’s claim based on its inability to develop the Gabel Thomas site is not ripe because it has not yet received a DEC permit to operate a mine at that site.