[695 NYS2d 7]

In the Matter of COMMITTEE TO PRESERVE BRIGHTON BEACH AND MANHATTAN BEACH, INC., et al., Appellants, v PLANNING COMMISSION OF THE CITY OF NEW YORK et al., Respondents.

First Department, August 12, 1999

## APPEARANCES OF COUNSEL

*Richard A. Lingg* of counsel (*Margaret Murphy* and *Edgar P. Coral* on the brief; *Shearman & Sterling,* attorneys), for appellants.

*Ellen Ravitch* of counsel (*Stephen J. McGrath* and *Christopher King* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for respondents.

*Michael B. Gerrard* of counsel (*Alice R. Thomas* and *Holly M. Leicht* on the brief; *Arnold & Porter,* and *Gerald A. Rosenberg,* attorneys), on behalf of Municipal Art Society of New York, Inc. and another, *amici curiae.*

## OPINION OF THE COURT

MAZZARELLI, J.

The threshold question on this appeal is whether individuals living in close proximity to a public park, and an organization dedicated to preserving and improving the neighborhood, have standing to challenge a City agency's grant of a concession for the construction and operation of a privately owned recreational center, based on their claims that the concession will interfere with their use, enjoyment and scenic views of the park. If some or all of the petitioners have standing, we must then determine whether the grant of the concession was in violation of the City Charter, or the State and City environmental review procedures.

Petitioners brought this CPLR article 78 proceeding to prevent the construction and operation of a concession for a recreational area in Dreier-Offerman Park in Southern Brooklyn.[1] The concession was granted to respondent Family Golf Centers, Inc. (Family Golf), which planned to construct and operate a golf-driving range, a miniature golf course, a domed in-line skating rink and batting cages. The concession agree-

---

1. A concession is a grant by an agency "for the private use of city-owned property for which the city receives compensation" (NY City Charter § 362 [a]).

ment also required Family Golf to relocate five existing soccer fields, and make various improvements to the park. Petitioners Sternberg, Torresi and Parisi own cooperative apartments in Contello Towers II, which is a cooperative apartment building that overlooks the park, from across the Belt Parkway. Petitioners Parisi and Fruchtman use the park for recreational purposes. Petitioner Committee to Preserve Brighton Beach and Manhattan Beach, Inc. (Committee) is a not-for-profit corporation dedicated to preserving, beautifying and improving the neighborhoods in South Brooklyn.

In December 1996, the New York City Department of Parks and Recreation (Parks Department) issued a Request For Proposal for the construction and operation of recreational facilities on the western peninsula of the park. Family Golf was the only applicant to submit a proposal. In addition, Family Golf prepared and submitted an Environmental Assessment Statement (EAS) for review by the Parks Department pursuant to the State Environmental Quality Review Act ([SEQRA] ECL 8-0101 *et seq.*) and the City Environmental Quality Review Rules ([CEQR] 62 RCNY 5-01 *et seq.*). Family Golf also engaged independent environmental consultants to prepare site plans and reports on potential environmental impacts such as traffic, noise and air quality, hazardous materials and waterfront development. Upon review of these materials and after its own investigation, the Parks Department concluded in March 1988 that the proposed concession would not have a significant impact on the environment, and issued a negative declaration to that effect.

However, due to a report of one of the engineering consultants which indicated the presence of "semi-volatile organic compounds" (semi-VOC's) in numerous soil samples from the site, the Parks Department requested that Family Golf submit a revised EAS, which it did. After the Parks Department completed the revised EAS, it issued a Revised Negative Declaration, again concluding that there would be no significant effect on the environment. The Revised Negative Declaration concluded, *inter alia*, that the concession would not significantly impact the neighborhood character because the area was already a park and was separated from most residential development by either the Belt Parkway or water; it would have no adverse effects on open space in that it would clean up areas which were underdeveloped and overgrown; and it would have no adverse effects on the area's natural resources.

With respect to the presence of semi-VOC's, which are potential carcinogens, the consultant's report attached to the

revised EAS concluded that "the threat to human health and the environment is likely minimal considering the development activities planned for the property." The consultant opined that the proposed asphalt-surface parking lot covering the grounds, and the improvements and landscaping, would "serve as a cap/surface barrier which shall minimize the generation of airborne particles and the human ingestion of those particles."

On April 21, 1998, the Parks Department executed a license agreement with Family Golf for the concession. On or about June 23, 1998, clearance work began at the site.

Petitioners commenced the instant article 78 proceeding on June 30, 1998, requesting both declaratory and injunctive relief. At oral argument, the IAS Court directed the parties' attention to, and requested written submissions on, two issues: (1) whether petitioners had standing to bring this proceeding, and (2) whether respondents violated the City Charter. Petitioners argued that respondents violated New York City Charter § 374 (b), adopted in 1989, which states: "The city planning commission shall adopt rules that either list major concessions or establish a procedure for determining whether a concession is a major concession. A 'major concession' shall mean a concession that has significant land use impacts and implications, as determined by the commission, or for which the preparation of an environmental impact statement is required by law. All major concessions shall be subject to review and approval pursuant to [§§ 197-c and 197-d]."

Petitioners argued that section 374 (b) was violated in that the Planning Commission had failed, despite several attempts, to adopt rules defining what constitutes a major concession. According to petitioners, the Parks Department's determination was arbitrary since it was made without the benefit of any Planning Commission rules. Petitioners argued that such error was significant because it circumvented the review and approval process in New York City Charter §§ 197-c and 197-d, the City's Uniform Land Use Review Procedure (ULURP), which provides for public hearings before the Planning Commission and review by the City Council. Respondents argued that it could not be faulted for not being guided by rules that were not in existence, and that, in any event, the proposed concession was a type which could not be considered a major concession. The parties presented their competing arguments as to whether petitioners had standing.

The IAS Court determined that none of the petitioners had standing. As a general observation, the court stated that "all of

the petitioners have expressed grievances that are not so much theirs as they are those of the general public more appropriately addressed in a political forum." It then addressed many of the specific claims of injury alleged by petitioners, which it described as "groundless and, at best express their fears and not real injury." The court found that the individuals' fear of interference with the use and enjoyment of the park, such as walking or bird watching, was unfounded. There was no evidence that they had walked in the specific area where the concession would be located, which was overgrown and dilapidated, and no evidence that birds were present or would depart if the concession were granted. The court found petitioners' claims concerning the contaminants in the soil to be "wholly speculative", since upon the Parks Department's insistence, a plan was developed to make the park safe from such contaminants. The court further found that the complaints of noise and traffic were only generalized grievances, and that although the individual petitioners' views would be altered by the new construction, they would suffer no "injury-in-fact", such as loss of light or air.

The court rejected petitioners' reliance on a presumption of standing based on their physical proximity to the site. It found that the presumption applies only "in favor of petitioners whose property values are likely to depreciate because of their location * * * in the immediate vicinity of the property undergoing change", and that, in any event, petitioners did not live close enough to the site to benefit from the presumption.

The court further determined that there was no violation of SEQRA or CEQR, since the record established that the Parks Department took the requisite " 'hard look' " at the potential environmental impacts of this project, and provided a " 'reasoned elaboration' " for the determination in the Revised Negative Declaration (*Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 363). The court also found that the public trust doctrine was not violated, but found it unnecessary to address petitioners' claimed violations of the City Charter.

On appeal, petitioners first argue that they have demonstrated injury in fact distinct from the public at large so as to confer standing upon them to bring this proceeding. They also contend that they are entitled to a presumption of standing based on their physical proximity to the concession site. As we agree with both propositions, we conclude that all the petitioners in this case had standing.

"For standing to sue, petitioners must show that they have suffered an injury in fact, distinct from that of the general pub-

lic (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 771-774)." (*Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 587.) The individual petitioners have met this burden. They have alleged in their affidavits that the concession will interfere with their use and enjoyment of the park, reduce the area of open space in the park, cause noise and traffic problems, cause contaminants to be released into the air and obstruct their views of the park from their building. These allegations constitute injury-in-fact. Further, since three of the individual petitioners live in close proximity to the park, and one uses it regularly, it is obvious that many of the alleged injuries would affect the petitioners in a manner wholly distinct from that of the public at large (*see, Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 687 [proximity alone permits an inference that the challenger possesses an interest different from other members of the community]). It is clearly a reasonable assumption that local residents will use the park facilities much more frequently than members of the general public.

While the IAS Court found petitioners' interests insubstantial, these aesthetic or quality of life type of injuries have consistently been recognized by the courts as a basis for standing (*see, Matter of Duke & Benedict v Town of Southeast*, 253 AD2d 877 [owner of nearby property who alleges actual or potential noneconomic harm from project risks harm that is different from public at large]; *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Council of City of N. Y.*, 214 AD2d 335, 336, *lv denied* 87 NY2d 802 [standing derived from proximity of petitioners' residences adjacent to the project which will impact on their sightlines, availability of light and potential flow of sea air]; *Matter of Steele v Town of Salem Planning Bd.*, 200 AD2d 870, 872, *lv denied* 83 NY2d 757 [requisite showing of standing made by allegation that petitioner lives in the immediate vicinity of the project and that it affects his scenic view]).

Additionally, an allegation of close proximity alone may give rise to an inference of injury enabling a nearby party to challenge an administrative determination without proof of actual injury (*Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra*, at 687; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals*, 69 NY2d 406, 414; *Matter of McGrath v Town Bd.*, 254 AD2d 614, 616; *Matter of Parisella v Town of Fishkill*, 209 AD2d 850, 851). Petitioners Sternberg, Torresi and Parisi live across the Belt Parkway from the park, in petitioner Contello

Towers II. While the IAS Court found that this was not sufficiently close proximity, we disagree. "Standing principles, which are in the end matters of policy, should not be heavy-handed * * * it is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules" (*Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra,* at 413). Petitioners were close enough that the views from their apartment would, if the concession were granted, be obstructed by a domed skating rink and a 100-foot-high-fenced golfing range.

▪ We find that the organizational petitioners Contello II and the Committee also possess standing. Each petitioner has demonstrated that one of its members has standing to sue, that the interests sought to be advanced by this proceeding are sufficiently germane to the petitioner's purposes, and that the participation of the individual members is not required to assert this claim or to afford petitioner complete relief (*see, Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d 326, 331; *Society of Plastics Indus. v County of Suffolk, supra,* at 775; *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Council of City of N. Y., supra,* at 336).

▪ Petitioners' next argument concerns the alleged violations of the City Charter. It is undisputed that the Planning Commission did not comply with its statutory duty to adopt rules for determining what constitutes a major concession,[2] and that in the absence of such rules, the Parks Department itself made the determination that the concession was not major. As a result, ULURP review was not triggered. The question we must decide is what is the effect of the Planning Commission's failure. Petitioners argue that in the absence of Planning Commission rules which either list all the types of major concessions, or provide some guidance for determining what concessions "have significant land use impacts and implications", the Parks Department's determination was necessarily arbitrary and capricious. Respondents counter that it is the Planning Commission's obligation to adopt rules, not to make individual determinations regarding concessions, and that the Parks Department made a rational determination in the absence of said rules.

We find petitioners' argument more persuasive. In the absence of Planning Commission rules, the Parks Department

---

2. The Planning Commission eventually adopted rules in 1998 pursuant to New York City Charter § 374 (b).

made a determination without the benefit of the specific guidelines upon which that determination was intended to be based. Presumably, it was exactly this type of unfettered discretion that New York City Charter § 374 (b) was designed to eliminate. The result of an abuse of that discretion would have significant consequences—ULURP review would be circumvented. Moreover, this was unquestionably a project of some magnitude, which would have considerable impact on the surrounding neighborhood. In our view, an agency determination rendered without the statutorily mandated guidelines must be considered arbitrary and capricious. Accordingly, we remand this matter to respondent Parks Department to render a determination as to whether the subject concession constitutes a major concession under the newly promulgated Planning Commission rules.

■ Petitioners further contend that respondents failed to fulfill the requirements of SEQRA and CEQR. Judicial review of a lead agency's SEQRA determination is limited to whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion (*see, Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra*, at 688; *Akpan v Koch*, 75 NY2d 561, 570). The questions before the court are "whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417; *see also, Akpan v Koch, supra*, at 570).

However, "[w]hile the judicial review must be genuine, 'the agency's substantive obligations under SEQRA must be viewed in light of a rule of reason' and the degree of detail with which each environmental factor must be discussed will necessarily vary and depend on the nature of the action under consideration" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia, supra*, at 688, quoting *Matter of Jackson v New York State Urban Dev. Corp., supra*, at 417).

We reject petitioners' contention that the Parks Department failed to take a "hard look" at the relevant areas of environmental concern, and failed to provide a "reasoned elaboration" for its findings. The ample administrative record demonstrates that the Parks Department's determination was based on a thorough review of each area of relevant concern, including the possible negative impact of hazardous materials, and on open spaces in the park, natural resources and wetlands, and

neighborhood character. Before rendering its determination, the Parks Department reviewed the revised EAS; detailed studies pertaining to noise, traffic and air quality; two phases of environmental assessments by the environmental consultant, site plans, site inspections, maps and photographs. Because there is evidence in the record establishing a review of each of the relevant areas identified by petitioners, we must conclude that the relevant hard look was undertaken (*Akpan v Koch, supra*, at 570; *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Council of City of N. Y., supra*, at 337).

Petitioners' SEQRA arguments are more directly focused on the "reasoned elaboration" requirement. For example, petitioners take issue with the consultant's opinion that airborne migration of the semi-VOC's would be prevented by the asphalt-paving, and that remediation of only "minor" contamination will be required. However, petitioners' disagreement with this assessment or explanation does not itself constitute a SEQRA violation. The issue of contaminants was identified and studied, and mitigating plans were adopted to prevent the migration of the contaminants during the operation or construction of the facility. In this context, the consultant's conclusion that "the threat to human health and the environment is likely minimal" satisfied the reasoned elaboration standard.

Similarly, petitioners argue that the Parks Department's finding in the Revised Negative Declaration that "[t]he project will result in no significant adverse effects to existing Open Space" was cursory and unsupported. However, the Revised Negative Declaration went on to state that the project "will clean up, improve and restore areas that are currently underdeveloped, inaccessible and overgrown." Further, the revised EAS, in slightly greater detail, identified the vacant land in the proposed site area, whether any publicly accessible open area would be removed or altered and whether any publicly accessible open space would be added. It is apparent, therefore, that the Parks Department did in fact consider the issue of open space, and petitioners' arguments relate solely to the sufficiency of detail in the Parks Department's explanation. We find that this explanation met the requirements of SEQRA, which, as noted, must be governed by a "rule of reason" (*Matter of Jackson v New York State Urban Dev. Corp., supra*, at 417). As petitioners' remaining arguments concerning other areas of environmental concern are similarly flawed, we do not believe that SEQRA was violated in any respect.

■ Lastly, we reject petitioners' argument that the public trust doctrine was violated. Charging a fee for some of the services provided by the facility does not negate the over-all recreational purpose of the concession.

Accordingly, the judgment, Supreme Court, New York County (Jeffrey Atlas, J.), entered September 25, 1998, which, in this article 78 proceeding seeking, *inter alia*, a declaration that the grant of a concession by respondent Parks Department to respondent Family Golf Centers to develop and construct a recreational area violated the City Charter, that the concession granted was a major concession for which ULURP is applicable, that the environmental review by the Parks Department was in violation of SEQRA and CEQR, and for an injunction against said concession, denied and dismissed the petition based on petitioners' lack of standing, should be modified, on the law, to the extent of remanding the matter to respondent Parks Department for a determination pursuant to New York City Charter § 374 (b) as to whether the subject concession constitutes a major concession under the City Planning Commission's rules, and otherwise affirmed, without costs.

SULLIVAN, J. P., WILLIAMS, WALLACH and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, entered September 25, 1998, modified, on the law, to the extent of remanding the matter to respondent Parks Department for a determination pursuant to New York City Charter § 374 (b) as to whether the subject concession constitutes a major concession under the City Planning Commission's rules, and otherwise affirmed, without costs.