■ In the Matter of PORT OF OSWEGO AUTHORITY et al., Appellants, v PETE GRANNIS, as Commissioner of Environmental Conservation, et al., Respondents. [897 NYS2d 736]—

Malone Jr., J. Appeal from a judgment of the Supreme Court (Sackett, J.), entered June 1, 2009 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for a declaratory judgment, to review certain conditions of the water quality certification issued by respondent Department of Environmental Conservation.

In 2008, as a result of litigation in federal court, the United States Environmental Protection Agency issued a proposed Vessel General Permit for Discharges Incidental to the Normal Operation of Commercial Vessels and Large Recreational Vessels (hereinafter VGP) to regulate the discharge of ballast water from certain vessels operating in the waters of the United States

*(see Northwest Envtl. Advocates v United States Envtl. Protection Agency,* 537 F3d 1006 [9th Cir 2008]; *see also* 33 USC § 1311 [a]; §§ 1342, 1362 [14]).[1] Respondent Department of Environmental Conservation (hereinafter DEC) then issued a certification of the VGP pursuant to Clean Water Act § 401, which contained various conditions that it deemed necessary to further protect the state's waters against the introduction of invasive aquatic species through ballast water *(see* 33 USC § 1341; 6 NYCRR part 701; 6 NYCRR 703.2). Petitioners—a coalition of public corporations, shipping companies and other entities with interests in maritime trade through the waters and ports of New York—commenced this combined proceeding pursuant to CPLR article 78 and action for a declaratory judgment challenging the certification on numerous grounds. Among other things, petitioners alleged that the first three conditions of the certification are arbitrary, capricious and not legally permissible, that DEC violated the State Environmental Quality Review Act *(see* ECL art 8 [hereinafter SEQRA]) by failing to consider the full range of environmental impacts of those conditions and that those conditions violate the US Constitution.[2] Deferring to DEC's interpretation of the ECL and the related regulatory authority, Supreme Court determined that the certification conditions were procedurally and substantively proper. Accordingly, the court dismissed the petition. Petitioners appeal.

The first challenged condition requires, in pertinent part, that certain vessels conducting coastal voyages within the exclusive economic zone[3] perform a ballast water exchange or a saltwater flush at least 50 nautical miles from shore in water at

---

1. "Ballast water is water that is taken on by cargo ships to compensate for changes in the ship's weight as cargo is loaded or unloaded, and as fuel and supplies are consumed. Ballast water may be used for a number of different purposes, such as maintaining stability, maintaining proper propeller and bow immersion, and to compensate for off-center weights" *(Northwest Envtl. Advocates v United States Envtl. Protection Agency,* 537 F3d 1006, 1012 [2008] [citation omitted]). When a ship takes in ballast water, organisms native to that water are also typically taken on board. When that water is discharged into another body of water, those organisms are released, often to the severe detriment of the native species of that new ecosystem *(see id.).*

2. Upon stipulation of the parties, Supreme Court granted the motion of Lake Carriers' Association to intervene as a petitioner and the motions of Natural Resources Defense Council and National Wildlife Federation to intervene as respondents.

3. The exclusive economic zone is "the area established by Presidential Proclamation Number 5030 . . . which extends from the base line of the territorial sea of the United States seaward 200 [nautical] miles" (33 CFR 151.1504).

least 200 meters deep.[4] The second condition sets forth numeric standards for invasive species discharges and requires existing vessels to install ballast water treatment systems to comply with those standards before January 1, 2012. The third condition sets forth more rigid standards for those discharges, which vessels constructed on or after January 1, 2013 will be required to meet. Petitioners contend that these conditions are arbitrary and capricious and not legally permissible.

Where, as here, the challenged action taken by an agency "involves factual evaluations in the area of the agency's expertise," the reviewing court may not substitute its judgment for that of the agency and the agency's determinations will be disturbed only when they lack a rational basis or are arbitrary and capricious (*Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987]; *see Matter of Infante v Dignan*, 12 NY3d 336, 341 [2009]; *Matter of Hassig v New York State Dept. of Envtl. Conservation*, 6 AD3d 1007, 1009 [2004], *lv dismissed and denied* 3 NY3d 736 [2004]). The Clean Water Act specifically permits a state to add conditions to its VGP certification that set forth additional limitations and restrictions to ensure that federal permittees will comply with the act as well as the applicable state laws (*see* 33 USC § 1341 [d]; *see also* 40 CFR 124.53 [e] [1]). Here, ample scientific evidence and expert opinion exists in the record to support DEC's determination that the challenged conditions are necessary to ensure federal permittees' compliance with New York's existing narrative water quality standards (*see* ECL art 17; 6 NYCRR parts 700, 701, 703). These existing standards aim to protect the state's waters from pollution and the conditions are reasonable restrictions intended to reduce the unintentional discharge of invasive aquatic species and other pathogens, thereby protecting the state's waters from the harm that such species and pathogens inflict.

Further, upon a review of the applicable statutory and regulatory authority, the certification and conditions contained therein were permissibly issued in accordance with the relevant procedures, including the applicable notice and public comment process (*see* ECL art 70; 6 NYCRR 621.1, 621.7). ECL 70-0107 (3) (d) specifically provides that "certifications under section 401 [of the Clean Water Act]" "shall be subject to the procedures

4. "Mid-ocean ballast water exchange is currently the most practicable method to help prevent the introductions of [invasive species] into U.S. waters" (Mandatory Ballast Water Management Program for U.S. Waters, 69 Fed Reg 44952, 44953 [July 28, 2004]; *see Northwest Envtl. Advocates v United States Envtl. Protection Agency*, 2006 WL 2669042, *3-6, 2006 US Dist LEXIS 69476, *11-17 [ND Cal 2006]).

provided in [ECL article 70]" (*see* 6 NYCRR 621.1 [e]; *see also* ECL 70-0117 [5] [a], [e]). Contrary to petitioners' assertions, the existing broad narrative water quality standards (*see* 6 NYCRR parts 701, 703) are sufficient to support the specific conditions (*see PUD No. 1 of Jefferson County v Washington Dept. of Ecology*, 511 US 700, 715-716 [1994]; *see also Islander E. Pipeline Co., LLC v McCarthy*, 525 F3d 141, 144-145 [2d Cir 2008], *cert denied* 555 US —, 129 S Ct 630 [2008]) without implementing rules pursuant to the State Administrative Procedure Act. Notably, the ECL requires "the use of all known available and reasonable methods to prevent and control the pollution" of state waters (ECL 17-0101; *see* ECL 17-0501 [1]; 6 NYCRR 700.1 [a] [42]), and existing regulations limit "toxic and other deleterious substances" to amounts that will not "impair the waters for their best usages" (6 NYCRR 703.2; *see also* ECL 17-0301, 17-0501; 6 NYCRR parts 701, 703).

As for the alleged SEQRA violations, because petitioners fail to allege anything other than economic harm to themselves or speculative ecological injury to the general public, they lack standing to challenge DEC's SEQRA review (*see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 687 [1996]; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773-775 [1991]). In any event, Supreme Court properly concluded that DEC identified the relevant areas of environmental concern, undertook the requisite hard look and provided a sufficiently reasoned elaboration for its decision to issue the negative declaration (*see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 231-232 [2007]).

Finally, we are unpersuaded by petitioners' contention that the certification conditions violate the Commerce Clause of the US Constitution given that DEC was expressly permitted to issue conditions to the VGP by Clean Water Act § 401 (*see* 33 USC § 1341; *see also Merrion v Jicarilla Apache Tribe*, 455 US 130, 154 [1982]). Nor do the conditions violate the federal foreign relations power or the Boundary Waters Treaty of 1909 (*see* 36 US Stat 2448). To the extent not specifically addressed herein, petitioners' remaining contentions have been considered and determined to be without merit.

Cardona, P.J., Rose, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs. **[Prior Case History: 24 Misc 3d 1042.]**