■ In the Matter of INDUSTRIAL LIAISON COMMITTEE OF THE NIAGARA FALLS CHAMBER OF COMMERCE et al., Respondents, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, Appellant, and PROVINCE OF ONTARIO et al., Intervenors-Respondents. — Harvey, J. Appeal from a judgment of the Supreme Court at Special Term (Kahn, J.), entered October 2, 1984 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Department of Environmental Conservation granting a State Pollutant Discharge Elimination System permit to the City of Niagara Falls.

During the early 1970's, the City of Niagara Falls and the Department of Environmental Conservation (DEC) decided that conditions required the construction of a large wastewater treatment facility capable of employing carbon absorption technology (CAT) to minimize pollution from industrial waste. All interested governmental agencies were contacted during the planning. The Niagara Falls Water Treatment Plant (NFWTP) became operational on June 17, 1978 under a National Pollutant Discharge Elimination System (NPDES) permit, which was deemed a State Pollutant Discharge Elimination System (SPDES) permit (6 NYCRR 751 [c]), issued on January 31, 1975. A month after starting operations, the entire CAT system, which involves industrial effluent filtering through beds of granular activated carbon so that organic particles adhere to the granular activated carbon purifying the water, became inoperable to the extent that it had to be reconstructed. Without the

CAT system, NFWTP was unable to meet the standards imposed by its SPDES permit, which expired January 31, 1980.

The issuance of a renewal permit involved the issuance of a preliminary draft, the solicitation of comments and the preparation of a final draft. A SPDES permit for NFWTP was issued October 5, 1982. It contained effluent limitations which NFWTP contends are unnecessary and which would be enormously expensive to achieve. No public hearing was conducted even though it was demanded.

Petitioners commenced this CPLR article 78 proceeding, contending that DEC acted arbitrarily and capriciously in the issuance of the permit and that it failed to abide by its own regulations in refusing to hold a hearing. Special Term found in petitioners' favor and vacated the October 5, 1982 SPDES permit. We agree.

In our view, the controlling DEC regulation is 6 NYCRR 621.7 (a), which provides: "The determination to hold a public hearing shall be based on * * * (2) for a SPDES permit, whether substantial public interest exists." Special Term relied upon 6 NYCRR 753.6 (b), which provides: "The commissioner shall hold a hearing if he determines that there is a significant public interest in and reason for holding such a hearing. In making such determination, he shall consider such expressions of public interest as the filing of requests or petitions for such hearing. Instances of doubt should be resolved in favor of holding a hearing."

Petitioners have facilities in the Niagara Falls area which collectively employ over 11,000 persons with annual payrolls of over $240 million, and pay over $3 million in sewer taxes and $8 million in real estate taxes each year. Consequently, it is obvious that the ultimate decision made herein will have a most significant impact upon both economic and environmental conditions of the area. The refusal to hold a hearing was arbitrary (*cf. Matter of City of Long Beach v Flacke*, 77 AD2d 638, *appeal dismissed* 51 NY2d 878).

DEC contends that Special Term erred in directing that the initial effluent limitations shall remain in effect during the period of remand to DEC for a new determination with respect to the permit. We agree and, therefore, must reverse that portion of the judgment ordering that the initial effluent limitations previously set shall remain in effect because it requires a determination incapable of being made upon the basis of the evidence before us. As a practical matter, it is our understanding that NFWTP's reconstruction is nearly finished and that the operation of a CAT system is imminent. It is also our understanding

that the preexisting NPDES permit contemplated CAT treatment. State Administrative Procedure Act § 401 (2) applies: "When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency".

Having decided as we have, we do not address the remaining issues raised on appeal.

Judgment modified, on the law, without costs, by vacating the final decretal paragraph thereof, and, as so modified, affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.