[16 NE3d 1188, 992 NYS2d 710]

In the Matter of MARK S. WALLACH, as Chapter 7 Trustee for NORSE ENERGY CORP. USA, Appellant, v TOWN OF DRYDEN et al., Respondents.

COOPERSTOWN HOLSTEIN CORPORATION, Appellant, v TOWN OF MIDDLEFIELD, Respondent.

Argued June 3, 2014; decided June 30, 2014

**POINTS OF COUNSEL**

*The West Firm, PLLC*, Albany (*Thomas S. West* and *Cindy Monaco* of counsel), for appellant in the first above-entitled action. I. The state has the power to preempt local zoning. (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372; *Wambat Realty Corp. v State of New York*, 41 NY2d 490.) II. ECL 23-0303 (2) expressly preempts the town prohibition. (*New York State Psychiatric Assn., Inc. v New York State Dept. of Health*,

19 NY3d 17; *Nostrom v A.W. Chesterton Co.*, 15 NY3d 502; *People v Paulin*, 17 NY3d 238; *Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Criscione v City of New York*, 97 NY2d 152; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95; *Envirogas, Inc. v Town of Kiantone*, 112 Misc 2d 432, 89 AD2d 1056, 58 NY2d 602; *Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead*, 91 AD3d 126; *Matter of Ames v Smoot*, 98 AD2d 216.) III. Mined Land Reclamation Law precedent is irrelevant to the Oil, Gas and Solution Mining Law express preemption analysis. (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668; *Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead*, 91 AD3d 126; *Floyd v New York State Urban Dev. Corp.*, 33 NY2d 1; *New York State Psychiatric Assn., Inc. v New York State Dept. of Health*, 19 NY3d 17.) IV. The town prohibition is conflict preempted by the Oil, Gas and Solution Mining Law and the Energy Law. (*Geier v American Honda Motor Co.*, 529 US 861; *Doomes v Best Tr. Corp.*, 17 NY3d 594; *Affronti v Crosson*, 95 NY2d 713; *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d 761; *Anonymous v City of Rochester*, 13 NY3d 35; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99.)

*EARTHJUSTICE,* New York City (*Deborah Goldberg* and *Bridget Lee* of counsel), for respondents in the first above-entitled action. I. The Oil, Gas and Solution Mining Law does not expressly preempt the Town of Dryden's zoning ordinance. (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668; *Matter of Hunt Bros. v Glennon*, 81 NY2d 906; *Georgitsi Realty, LLC v Penn-Star Ins. Co.*, 21 NY3d 606; *DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Wambat Realty Corp. v State of New York*, 41 NY2d 490; *Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d 186; *Morton v Mancari*, 417 US 535; *Brocco v Mileo*, 170 AD2d 732; *Civil Serv. Empls. Assn. v County of Oneida*, 78 AD2d 1004.) II. The doctrine of implied preemption does not preclude enforcement of the zoning ordinance. (*Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105; *Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.*, 26 AD3d 15; *Wagner v Mallory*, 169 NY 501; *Ohio Oil Co. v Indi-*

*ana,* 177 US 190; *Matter of Sylvania Corp. v Kilbourne,* 28 NY2d 427; *Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *DJL Rest. Corp. v City of New York,* 96 NY2d 91; *Matter of Schadow v Wilson,* 191 AD2d 53.) III. State oil and gas regulation coexists with local land use regulation in many states.

*Levene Gouldin & Thompson, LLP,* Binghamton (*Scott R. Kurkoski* of counsel), and *The West Firm, PLLC,* Albany (*Thomas S. West* and *Cindy Monaco* of counsel), for appellant in the second above-entitled action. I. ECL 23-0303 (2) expressly preempts the town prohibition, given the common and ordinary meaning of "regulation" as well as given the legislature's intent to limit local jurisdiction to only roads and taxes. (*Matter of Cohen v Board of Appeals of Vil. of Saddle Rock,* 100 NY2d 395; *Oil Heat Inst. of Long Is. v Town of Babylon,* 156 AD2d 352; *Vatore v Commissioner of Consumer Affairs of City of N.Y.,* 83 NY2d 645; *People v Couser,* 94 NY2d 631; *People v Hedgeman,* 70 NY2d 533; *People v Thompson,* 99 NY2d 38; *Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities,* 19 NY3d 106; *Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 66 NY2d 298; *Matter of Plato's Cave Corp. v State Liq. Auth.,* 68 NY2d 791; *Matter of Norse Energy Corp. USA v Town of Dryden,* 108 AD3d 25.) II. The Oil, Gas and Solution Mining Law occupies the entire field of oil and gas regulation, thereby preempting any related local regulation. (*Matter of Cohen v Board of Appeals of Vil. of Saddle Rock,* 100 NY2d 395; *Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372; *Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347; *Incorporated Vil. of Nyack v Daytop Vil.,* 78 NY2d 500.) III. The town prohibition conflicts with state law and policy; therefore, it is preempted. (*New York State Club Assn. v City of New York,* 69 NY2d 211; *Consolidated Edison Co. of N.Y. v Town of Red Hook,* 60 NY2d 99; *Zakrzewska v New School,* 14 NY3d 469; *DJL Rest. Corp. v City of New York,* 96 NY2d 91; *Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91; *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs,* 74 NY2d 761; *Anonymous v City of Rochester,* 13 NY3d 35; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock,* 100 NY2d 395.) IV. Decisions reached by other jurisdictions suggest that the Oil, Gas and Solution Mining Law preempts local municipalities from enacting a total ban on oil and gas development. (*Energy Mgt. Corp. v City of Shreveport,* 397 F3d 297.)

*Whiteman Osterman & Hanna LLP*, Albany (*John J. Henry, David R. Everett* and *Robert S. Rosborough IV* of counsel), for respondent in the second above-entitled action. I. The Town of Middlefield properly exercised its constitutional home rule authority to determine that heavy industrial uses, including oil, gas, and solution mining, are prohibited within its borders. (*Matter of St. Onge v Donovan*, 71 NY2d 507; *Matter of Dexter v Town Bd. of Town of Gates*, 36 NY2d 102; *Village of Valatie v Smith*, 190 AD2d 17, 83 NY2d 396; *Church v Town of Islip*, 8 NY2d 254; *Goodrich v Town of Southampton*, 39 NY2d 1008; *Matter of Van Berkel v Power*, 16 NY2d 37; *Stringfellow's of N.Y. v City of New York*, 91 NY2d 382; *Asian Ams. for Equality v Koch*, 72 NY2d 121; *Matter of McGrath v Town Bd. of Town of N. Greenbush*, 254 AD2d 614, 93 NY2d 803; *Kravetz v Plenge*, 84 AD2d 422.) II. ECL 23-0303 (2) does not expressly preempt the Town of Middlefield's zoning law. (*Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91; *New York State Club Assn. v City of New York*, 69 NY2d 211, 487 US 1; *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Riley v County of Broome*, 95 NY2d 455; *Jones v Bill*, 10 NY3d 550; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *Graev v Graev*, 11 NY3d 262; *Louhal Props. v Strada*, 191 Misc 2d 746, 307 AD2d 1029.) III. ECL 23-0303 (2) does not implicitly preempt the Town of Middlefield's zoning law. (*Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105, 555 US 1136; *Harrell v Champlain Enters.*, 200 AD2d 290; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395; *Anonymous v City of Rochester*, 13 NY3d 35; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99; *People v De Jesus*, 54 NY2d 465; *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347; *Matter of JIJ Realty Corp. v Costello*, 239 AD2d 580, 90 NY2d 811; *Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.*, 26 AD3d 15; *Matter of Friends of Shawangunks v Knowlton*, 64 NY2d 387.) IV. Plaintiff's reliance on law in other states to interpret the scope of preemption under ECL 23-0303 (2) is misplaced. (*Energy Mgt. Corp. v City of Shreveport*, 397 F3d 297; *LaValle v Hayden*, 98 NY2d 155.)

*Scott M. Stringer, Office of the Manhattan Borough President*, New York City (*Andrew L. Kalloch* of counsel), for Manhattan Borough President Scott M. Stringer and others, amici curiae in the first above-entitled action. I. Municipal zoning is a crucial tool for community-based planning. (*DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Matter of Gernatt Asphalt Prods. v Town*

*of Sardinia,* 87 NY2d 668; *Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126.) II. Home rule law supports the use of zoning to respond to environmental and public health concerns associated with hydraulic fracturing. (*Anschutz Exploration Corp. v Town of Dryden,* 35 Misc 3d 450; *Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359; *Berenson v Town of New Castle,* 38 NY2d 102; *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338; *Suffolk Hous. Servs. v Town of Brookhaven,* 70 NY2d 122; *Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *Rodgers v Village of Tarrytown,* 302 NY 115.) III. The effect of local bans on the viability of hydraulic fracturing in New York State is not germane to this Court's preemption analysis.

*Washington Legal Foundation,* Washington, D.C. (*Cory L. Andrews* and *Richard A. Samp* of counsel), and *Lally & Misir, LLP,* Mineola (*Deborah N. Misir* of counsel), for Washington Legal Foundation, amicus curiae in the first above-entitled action. I. The decision below misapplies the law of preemption. (*Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.,* 98 NY2d 575; *New York State Club Assn. v City of New York,* 69 NY2d 211; *Consolidated Edison Co. of N.Y. v Town of Red Hook,* 60 NY2d 99.) II. The decision below will create a great disincentive for oil and gas investment in New York State.

*Columbia Environmental Law Clinic, Morningside Heights Legal Services,* New York City (*Susan J. Kraham* of counsel), for Vicki Been and others, amici curiae in the first above-entitled action. I. ECL 23-0303 (2) should be construed in light of a presumption against preemption of local laws by ambiguous state statutes. (*Kamhi v Town of Yorktown,* 74 NY2d 423; *Matter of Pete Drown, Inc. v Town Bd. of Town of Ellenburg,* 188 AD2d 850; *Matter of Fammler v Board of Zoning Appeals of Town of Hempstead,* 254 App Div 777; *Matter of Town of Brookhaven v New York State Bd. of Equalization & Assessment,* 88 NY2d 354; *Hunter v Warren County Bd. of Supervisors,* 21 AD3d 622; *Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126; *Adler v Deegan,* 251 NY 467; *Wambat Realty Corp. v State of New York,* 41 NY2d 490; *Matter of Town of Islip v Cuomo,* 64 NY2d 50; *People v Cook,* 34 NY2d 100.) II. Read in light of the presumption against preemption, ECL 23-0303 (2) does not preempt the zoning prohibitions on oil and gas drilling enacted by the Town of Dryden. (*Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126; *California Div. of Labor*

*Standards Enforcement v Dillingham Constr., N. A., Inc.*, 519 US 316; *Anschutz Exploration Corp. v Town of Dryden*, 35 Misc 3d 450; *Pacific Gas & Elec. Co. v State Energy Resources Conservation & Development Comm'n*, 461 US 190; *New York State Pub. Empls. Fedn., AFL-CIO v City of Albany*, 72 NY2d 96; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668.)

*Knauf Shaw LLP*, Rochester (*Alan J. Knauf, Amy K. Kendall* and *Arthur L. James, III*, of counsel), for Dryden Resource Awareness Coalition, amicus curiae in the first above-entitled action. The Oil, Gas and Solution Mining Law does not preempt municipal zoning laws. (*Kamhi v Town of Yorktown*, 74 NY2d 423; *Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668; *Kramer v Phoenix Life Ins. Co.*, 15 NY3d 539; *Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation*, 14 NY3d 161; *Matter of St. Onge v Donovan*, 71 NY2d 507; *Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead*, 20 NY3d 481; *Matter of Envirogas, Inc. v Town of Kiantone*, 112 Misc 2d 432.)

*Community Environmental Defense Council, Inc.*, Ithaca (*David Slottje* and *Helen Slottje* of counsel), for Community Environmental Defense Council, Inc., amicus curiae in the first above-entitled action. A decision by this Court to uphold local municipal authority to enact land use laws prohibiting gas drilling would not be inconsistent with the policies of preventing waste, protecting correlative rights, and providing for greater ultimate recovery. (*Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.*, 26 AD3d 15; *Champlin Refining Co. v Corporation Comm'n of Okla.*, 286 US 210.)

*Jordan A. Lesser*, Albany, for Assemblywoman Barbara Lifton, amicus curiae in the first above-entitled action. I. Article IX of the NY Constitution authorizes municipal zoning authority. (*Preble Aggregate v Town of Preble*, 263 AD2d 849; *Village of Euclid v Ambler Realty Co.*, 272 US 365; *Wambat Realty Corp. v State of New York*, 41 NY2d 490.) II. Municipal home rule powers are not preempted by ECL 23-0303 (2). (*Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Cooperstown Holstein Corp. v Town of Middlefield*, 35 Misc 3d 767; *Matter of Envirogas, Inc. v Town of Kiantone*, 112 Misc 2d 432; *Matter of Western*

*Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.*, 26 AD3d 15.) III. There is no legal requirement or vested right for natural resource extraction. (*Preble Aggregate v Town of Preble*, 263 AD2d 849; *Matter of Lefrak Forest Hills Corp. v Galvin*, 40 AD2d 211; *Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie*, 95 AD3d 1636; *Glacial Aggregates LLC v Town of Yorkshire*, 14 NY3d 127; *Town of Orangetown v Magee*, 88 NY2d 41; *People v Miller*, 304 NY 105.)

*Whiteman Osterman & Hanna LLP*, Albany (*John J. Henry, David R. Everett* and *Robert S. Rosborough IV* of counsel), for Town of Ulysses and others, amici curiae in the first and second above-entitled actions. I. Generally applicable municipal zoning ordinances are not expressly preempted under ECL 23-0303 (2). (*Matter of St. Onge v Donovan*, 71 NY2d 507; *Matter of Dexter v Town Bd. of Town of Gates*, 36 NY2d 102; *Village of Valatie v Smith*, 190 AD2d 17, 83 NY2d 396; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668; *Wambat Realty Corp. v State of New York*, 41 NY2d 490; *DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Udell v Haas*, 21 NY2d 463; *Kamhi v Town of Yorktown*, 74 NY2d 423; *Adler v Deegan*, 251 NY 467; *Zahra v Town of Southold*, 48 F3d 674.) II. The legislature has not implicitly preempted generally applicable zoning ordinances. (*Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395; *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99; *People v De Jesus*, 54 NY2d 465; *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91; *Matter of JIJ Realty Corp. v Costello*, 239 AD2d 580, 90 NY2d 811; *Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.*, 26 AD3d 15, 6 NY3d 713.)

*Cynthia Feathers*, Glens Falls, and *Elizabeth Dribusch, General Counsel*, Albany, for New York Farm Bureau, amicus curiae in the first and second above-entitled actions. The state policy of fully protecting the "correlative rights" of owners and the rights of farmers and other landowners encompasses guaranteeing them a fair share of revenues from drilling; such policy is subservient to the goals of reducing waste and maximizing recovery; and these policy goals cannot be fulfilled unless the state's authority to regulate natural gas development is supreme. (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668.)

*Hodgson Russ LLP*, Buffalo (*Daniel A. Spitzer, Alan J. Laurita* and *Charles W. Malcomb* of counsel), for Independent Oil and Gas Association of New York, Inc., amicus curiae in the first and second above-entitled actions. I. The Oil, Gas and Solution Mining Law preempts all local regulation of the oil and natural gas industry, with only two specific and limited exceptions for powers granted municipalities in the NY Constitution. (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205; *Tompkins v Hunter*, 149 NY 117; *Matter of Alonzo M. v New York City Dept. of Probation*, 72 NY2d 662; *Matter of Jacob*, 86 NY2d 651; *Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *People v Finnegan*, 85 NY2d 53; *Pajak v Pajak*, 56 NY2d 394; *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347; *Matter of Envirogas, Inc. v Town of Kiantone*, 112 Misc 2d 432.) II. Accepting the Third Department's rationale would further violate the rules of statutory construction by rendering exceptions to the Oil, Gas and Solution Mining Law's preemption provision meaningless. (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509.) III. Municipal regulation of the location of oil and gas development impermissibly conflicts with the state regulatory regime. (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99; *Matter of Chwick v Mulvey*, 81 AD3d 161.)

*Sidley Austin LLP*, Washington, D.C. (*Roger R. Martella, Jr., Samuel B. Boxerman, Quin M. Sorenson* and *Joshua J. Fougere* of counsel), *Sidley Austin LLP*, New York City, *American Petroleum Institute*, Washington, D.C. (*Harry M. Ng* and *Benjamin Norris* of counsel), and *National Chamber Litigation Center, Inc.* (*Sheldon Gilbert* and *Rachel L. Brand* of counsel), for American Petroleum Institute and another, amici curiae in the first and second above-entitled actions. I. Zoning regulations that ban all drilling operations in an area are expressly preempted by the New York Oil and Gas Law. (*Pacific Gas & Elec. Co. v State Energy Resources Conservation & Development Comm'n*, 461 US 190; *Suffolk County v Long Is. Light. Co.*, 728 F2d 52; *State of New York v Philip Morris Inc.*, 8 NY3d 574; *Morales v Trans World Airlines, Inc.*, 504 US 374; *Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health*, 84 NY2d 252; *Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95; *Matter of DeTroia v Schweitzer*, 87 NY2d 338; *Kamhi v Town of Yorktown*, 74 NY2d 423; *Wambat Realty Corp. v State of New York*, 41 NY2d 490.)

II. Zoning regulations that ban all drilling operations in an area are impliedly preempted by the New York Oil and Gas Law. (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99; *Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347; *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500; *Matter of Sylvania Corp. v Kilbourne*, 28 NY2d 427.) III. Local zoning regulations that ban all drilling operations in an area undermine the authority and expertise of the New York State Department of Environmental Conservation in considering the safety and effectiveness of oil and gas drilling and hydraulic fracturing throughout New York.

*Levene Gouldin & Thompson, LLP*, Binghamton (*Scott R. Kurkoski* of counsel), for Joint Landowners Coalition of New York, Inc. and others, amici curiae in the first and second above-entitled actions. I. Affirming town-wide bans on all oil and gas activities will in effect forever bar all oil and gas production in New York in clear contradiction to state law and legislative intent. II. Defendants' town-wide bans constitute unconstitutional takings of land interests. (*S. Berzal & Co. v State of New York*, 8 AD2d 886; *Matter of Smith v Town of Mendon*, 4 NY3d 1; *Pennsylvania Coal Co. v Mahon*, 260 US 393; *Palazzolo v Rhode Island*, 533 US 606; *Lucas v South Carolina Coastal Council*, 505 US 1003; *Matter of Gazza v New York State Dept. of Envtl. Conservation*, 89 NY2d 603; *Penn Central Transp. Co. v New York City*, 438 US 104.) III. New York will lose documented economic opportunities if municipalities are allowed to control development of the state's natural resources. (*Matter of Nornew, Inc. v Marsh*, 301 AD2d 206.) IV. Defendants' town-wide bans are unconstitutional pursuant to the dormant Commerce Clause doctrine. (*City of New York v State of New York*, 94 NY2d 577; *United Haulers Assn., Inc. v Oneida-Herkimer Solid Waste Management Authority*, 550 US 330; *C & A Carbone, Inc. v Clarkstown*, 511 US 383; *Pike v Bruce Church, Inc.*, 397 US 137; *Homier Distrib. Co. v City of Albany*, 90 NY2d 153.) V. Oil and gas production using high-volume hydraulic fracturing and horizontal drilling benefits national security and the environment. VI. The actions of the City of Dunkirk Common Council demonstrate the legal and policy arguments in favor of preemption.

*Tooher & Barone, LLP*, Albany (*John L. Barone* and *Meave M. Tooher* of counsel), for Brewery Ommegang, Ltd. and others, amici curiae in the first and second above-entitled actions. I. Local municipalities in New York are entitled to exercise delegated

zoning power to preserve their existing natural resources and community character against potential negative impacts from the oil and gas industry. (*DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Village of Euclid v Ambler Realty Co.*, 272 US 365; *Matter of Schilling v Dunne*, 119 AD2d 179; *Kasper v Town of Brookhaven*, 142 AD2d 213; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668; *Curtiss-Wright Corp. v Town of E. Hampton*, 82 AD2d 551; *Matter of Village of Chestnut Ridge v Town of Ramapo*, 45 AD3d 74; *Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba*, 238 AD2d 93.) II. Municipal home rule, local zoning and land use controls provide a locality the critical authority to preserve the reciprocal development of the local economy within its communities. (*Anschutz Exploration Corp. v Town of Dryden*, 35 Misc 3d 450; *Cooperstown Holstein Corp. v Town of Middlefield*, 106 AD3d 1170, 21 NY3d 863.) III. The lower court's decision that local governments are not preempted by ECL 23-0303 (2) from enacting land use laws that ban hydrofracking should be upheld in accordance with the authority delegated to municipalities for governance of local land use. (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668; *Town of LaGrange v Giovenetti Enters.*, 123 AD2d 688; *Matter of JIJ Realty Corp. v Costello*, 239 AD2d 580; *Town of Huntington v Park Shore Country Day Camp of Dix Hills*, 47 NY2d 61; *Cooperstown Holstein Corp. v Town of Middlefield*, 106 AD3d 1170; *Village of Belle Terre v Boraas*, 416 US 1; *Village of Euclid v Ambler Realty Co.*, 272 US 365; *Anschutz Exploration Corp. v Town of Dryden*, 35 Misc 3d 450; *Morton v Mancari*, 417 US 535.)

*Katherine Sinding*, New York City, and *Daniel Raichel* for American Planning Association and others, amici curiae in the first and second above-entitled actions. I. Hydrofracking is a heavy industrial process with the potential to seriously impair the character and development goals of New York's local communities. II. New Yorkers rely on municipal land use controls to protect communities from potentially damaging or inappropriate uses, such as hydrofracking. (*Village of Euclid v Ambler Realty Co.*, 272 US 365; *DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Udell v Haas*, 21 NY2d 463; *Thomas v Town of Bedford*, 11 NY2d 428; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668.) III. Neither the Oil, Gas and Solution Mining Law nor the State Environmental Quality Review Act adequately evaluate or address the impacts of hydrofracking on the character and locally important resources of New York com-

munities. (*Matter of Pete Drown, Inc. v Town Bd. of Town of El-lenburg*, 188 AD2d 850; *Anschutz Exploration Corp. v Town of Dryden*, 35 Misc 3d 450; *Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba*, 238 AD2d 93; *Matter of Schadow v Wilson*, 191 AD2d 53.)

## OPINION OF THE COURT

GRAFFEO, J.

We are asked in these two appeals whether towns may ban oil and gas production activities, including hydrofracking, within municipal boundaries through the adoption of local zoning laws. We conclude that they may because the supersession clause in the statewide Oil, Gas and Solution Mining Law (OGSML) does not preempt the home rule authority vested in municipalities to regulate land use. The orders of the Appellate Division should therefore be affirmed.

## I.

*Matter of Wallach v Town of Dryden*

Respondent Town of Dryden is a rural community located in Tompkins County, New York. Land use in Dryden is governed by a comprehensive plan and zoning ordinance. The underlying goal of the comprehensive plan is to "[p]reserve the rural and small town character of the Town of Dryden, and the quality of life its residents enjoy, as the town continues to grow in the coming decades." Despite the fact that oil and gas drilling has not historically been associated with Dryden, its location within the Marcellus Shale region has piqued the interest of the natural gas industry.

The Marcellus Shale formation covers a vast area across sections of a number of states, including New York, Pennsylvania, Ohio and West Virginia. Natural gas—primarily methane—is found in shale deposits buried thousands of feet below the surface and can be extracted through the combined use of horizontal drilling and hydrofracking. To access the natural gas, a well is drilled vertically to a location just above the target depth, at which point the well becomes a horizontal tunnel in order to maximize the number of pathways through which the gas may be removed. The process of hydraulic fracturing—commonly referred to as hydrofracking—can then commence. Hydrofracking involves the injection of large amounts of pressurized fluids (water and chemicals) to stimulate or fracture the shale formations, causing the release of the natural gas (*see generally* US

Dept of Energy, *Natural Gas from Shale: Questions and Answers* [Apr. 2013], available at http://www.energy.gov/sites/prod/files/2013/04/f0/complete_brochure.pdf [accessed June 18, 2014]).[1]

In 2006, petitioner Norse Energy Corp. USA (Norse), through its predecessors, began acquiring oil and gas leases from landowners in Dryden for the purpose of exploring and developing natural gas resources.[2] The Town Board took the position that gas extraction activities were prohibited in Dryden because such operations fell within the catch-all provision of its zoning ordinance that precluded any uses not specifically allowed. Nevertheless, the Town Board decided to engage in a "clarification" of the issue. After holding a public hearing and reviewing a number of relevant scientific studies, the Town Board unanimously voted to amend the zoning ordinance in August 2011 to specify that all oil and gas exploration, extraction and storage activities were not permitted in Dryden. The amendment also purported to invalidate any oil and gas permit issued by a state or federal agency. In adopting the amendment, the Town Board declared that the industrial use of land in the "rural environment of Dryden" for natural gas purposes "would endanger the health, safety and general welfare of the community through the deposit of toxins into the air, soil, water, environment, and in the bodies of residents."

A month later, Norse commenced this hybrid CPLR article 78 proceeding and declaratory judgment action to challenge the validity of the zoning amendment. Norse asserted that Dryden lacked the authority to prohibit natural gas exploration and extraction activities because section 23-0303 (2) of the Environmental Conservation Law (ECL)—the supersession clause in the Oil, Gas and Solution Mining Law—demonstrated that the state legislature intended to preempt local zoning laws that curtailed energy production. In response, Dryden moved for summary judgment, seeking a declaration that the zoning amendment was a valid exercise of its home rule powers.

---

**1.** There remains an ongoing public debate about the potential environmental and safety risks associated with shale gas production. Currently, there is a statewide moratorium on "high-volume hydraulic fracturing combined with horizontal drilling" pending further study of the associated environmental impacts (Executive Order [Paterson] No. 41 [9 NYCRR 7.41]; *see also* Executive Order [Cuomo] No. 2 [9 NYCRR 8.2]).

**2.** Norse has since initiated bankruptcy proceedings and Mark S. Wallach, as bankruptcy trustee, has been substituted as the petitioner. For ease of reference, petitioner in this case will continue to be referred to as Norse.

Supreme Court granted Dryden's motion and declared the amendment valid with one exception—it struck down the provision invalidating state and federal permits (35 Misc 3d 450 [Sup Ct, Tompkins County 2012]). The Appellate Division affirmed, rejecting Norse's claim that the OGSML preempted Dryden's zoning amendment (108 AD3d 25 [3d Dept 2013]). We granted Norse leave to appeal (21 NY3d 863 [2013]).

*Cooperstown Holstein Corporation v Town of Middlefield*

Defendant Town of Middlefield, which includes a portion of the Village of Cooperstown, is located in Otsego County, New York, and its principal industries are agriculture and tourism. Its land use is regulated by a master plan and zoning ordinance. Similar to Dryden, there has been no oil or gas presence in Middlefield until 2007, when plaintiff Cooperstown Holstein Corporation (CHC) executed two leases with a landowner to explore the possibility of developing natural gas resources through hydrofracking.

Although the Town claimed that its zoning ordinance already prohibited natural gas exploration on the basis that it was not listed as a permissible land use, it undertook a lengthy and detailed review of the issue in 2011. After commissioning a study to weigh the impacts that hydrofracking would have on Middlefield and conducting public meetings, the Town Board, by a unanimous vote, amended its master plan to adopt a zoning provision classifying a range of heavy industrial uses, including oil, gas and solution mining and drilling, as prohibited uses. The Town Board reasoned that the "Cooperstown area is known worldwide for its clean air, clean water, farms, forests, hills, trout streams, scenic viewsheds, historic sites, quaint village and hamlets, rural lifestyle, recreational activities, sense of history, and history of landscape conservation," and concluded that industrialization, such as hydrofracking, would "eliminate many of these features" and "irreversibly overwhelm the rural character of the Town."

CHC promptly brought this action to set aside the zoning law, contending that it was preempted by the supersession provision in the OGSML. CHC and Middlefield each moved for summary judgment. Supreme Court denied CHC's motion and granted Middlefield's cross motion to dismiss the complaint, upholding the legality of the zoning law (35 Misc 3d 767 [Sup Ct, Otsego County 2012]). The Appellate Division affirmed (106 AD3d 1170 [3d Dept 2013]), and we granted CHC leave to appeal (21 NY3d 863 [2013]).

## II.

On appeal, Norse and CHC, supported by several amici curiae, press their contention that Dryden and Middlefield (collectively, the Towns) lacked the authority to proscribe hydrofracking and associated natural gas activities within their town boundaries. They assert that the energy policy of New York, as exemplified by the statewide OGSML, requires a uniform approach and cannot be subject to regulation by a melange of the state's 932 towns. They maintain that the OGSML contains a supersession clause that expressly preempts all local zoning laws, like those enacted by the Towns, which restrict or forbid oil and gas operations on real property within a municipality. The Towns, joined by other amici curiae, respond that the courts below correctly concluded that they acted within their home rule authority in adopting the challenged local laws. They urge that the ability of localities to restrict the industrial use of land with the aims of preserving the characteristics of their communities and protecting the health, safety and general welfare of their citizens implicates the very essence of municipal governance. They further contend that, when analyzed under the principles set forth in our precedent, the OGSML and its supersession clause do not extinguish their zoning powers. Unlike our dissenting colleagues, we believe that the Towns have the better argument.

Our analysis begins with a review of the source of municipal authority to regulate land use and the limits the State may impose on this power. Article IX, the "home rule" provision of the New York Constitution, states that "every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law . . . except to the extent that the legislature shall restrict the adoption of such a local law" (NY Const, art IX, § 2 [c] [ii]). To implement this constitutional mandate, the state legislature enacted the Municipal Home Rule Law, which empowers local governments to pass laws both for the "protection and enhancement of [their] physical and visual environment" (Municipal Home Rule Law § 10 [1] [ii] [a] [11]) and for the "government, protection, order, conduct, safety, health and well-being of persons or property therein" (Municipal Home Rule Law § 10 [1] [ii] [a] [12]). The legislature likewise authorized towns to enact zoning laws for the purpose of fostering "the health, safety, morals, or the general welfare of the community" (Town Law § 261; *see also* Statute of Local Governments § 10 [6] [granting

towns "the power to adopt, amend and repeal zoning regulations"]). As a fundamental precept, the legislature has recognized that the local regulation of land use is "[a]mong the most important powers and duties granted . . . to a town government" (Town Law § 272-a [1] [b]).

We, too, have designated the regulation of land use through the adoption of zoning ordinances as one of the core powers of local governance (*see DJL Rest. Corp. v City of New York*, 96 NY2d 91, 96 [2001]). Without question, municipalities may "enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of [the community]" (*Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council*, 91 NY2d 161, 165 [1997] [internal quotation marks and citation omitted]). And we have repeatedly highlighted the breadth of a municipality's zoning powers to "provide for the development of a balanced, cohesive community" in consideration of "regional needs and requirements" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 683 [1996]; *see also Udell v Haas*, 21 NY2d 463, 469 [1968] ["Underlying the entire concept of zoning is the assumption that zoning can be a vital tool for maintaining a civilized form of existence"]).

That being said, as a political subdivision of the State, a town may not enact ordinances that conflict with the State Constitution or any general law (*see* Municipal Home Rule Law § 10 [1] [i], [ii]). Under the preemption doctrine, a local law promulgated under a municipality's home rule authority must yield to an inconsistent state law as a consequence of "the untrammeled primacy of the Legislature to act with respect to matters of State concern" (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989] [internal quotation marks, ellipses and citation omitted]). But we do not lightly presume preemption where the preeminent power of a locality to regulate land use is at stake. Rather, we will invalidate a zoning law only where there is a "clear expression of legislative intent to preempt local control over land use" (*Gernatt*, 87 NY2d at 682).

Aware of these principles, Norse and CHC do not dispute that, absent a state legislative directive to the contrary, municipalities would ordinarily possess the home rule authority to restrict the use of land for oil and gas activities in furtherance of local interests. They claim, however, that the state legislature has clearly expressed its intent to preempt zoning laws of local governments through the OGSML's "supersession clause," which reads:

"The provisions of this article [i.e., the OGSML] shall supersede *all local laws or ordinances relating to the regulation of the oil, gas and solution mining industries*; but shall not supersede local government jurisdiction over local roads or the rights of local governments under the real property tax law" (ECL 23-0303 [2] [emphasis added]).

According to Norse and CHC, this provision should be interpreted broadly to reach zoning laws that restrict, or, as presented here, prohibit oil and gas activities, including hydrofracking, within municipal boundaries.

We do not examine the preemptive sweep of this supersession clause on a blank slate. The scope of section 23-0303 (2) must be construed in light of our decision in *Matter of Frew Run Gravel Prods. v Town of Carroll* (71 NY2d 126 [1987]), which articulated the analytical framework to determine whether a supersession clause expressly preempts a local zoning law. There, we held that this question may be answered by considering three factors: (1) the plain language of the supersession clause; (2) the statutory scheme as a whole; and (3) the relevant legislative history. The goal of this three-part inquiry, as with any statutory interpretation analysis, is to discern the legislature's intent.[3] Before applying the tripartite test to the supersession clause at issue, it is necessary to discuss *Frew Run* in more detail as that precedent bears directly on the outcome of these cases.

At issue in *Frew Run* was the validity of the Town of Carroll's zoning ordinance establishing a zoning district where sand and gravel operations were not permitted. A company seeking to open a sand and gravel mine in the town challenged the zoning law, arguing that it was preempted by the supersession clause in the statewide Mined Land Reclamation Law (MLRL), which, at the time, provided:

"For the purposes stated herein, this title shall supersede all other state and *local laws relating to the extractive mining industry*; provided, however, that nothing in this title shall be construed to

---

**3.** In *Frew Run*, we found that the preemption issue was a matter of statutory construction and not a search for implied preemption because the legislature had included an express supersession clause within the Mined Land Reclamation Law, the relevant statutory scheme (*see Frew Run*, 71 NY2d at 130-131).

prevent any local government from enacting local zoning ordinances or other local laws which impose stricter mined land reclamation standards or requirements than those found herein" (ECL 23-2703 [former (2)] [emphasis added]).

We rejected the mining company's contention that the clause preempted the land use restriction, explaining that the plain language of the phrase "local laws relating to the extractive mining industry" did not encompass zoning provisions. Instead, we held that the zoning law "relates not to the extractive mining industry but to an entirely different subject matter and purpose . . . the use of land in the Town of Carroll" (*Frew Run*, 71 NY2d at 131 [internal quotation marks and citation omitted]). Drawing a distinction between local regulations addressing "the actual operation and process of mining" and zoning laws regulating land use generally, we concluded that only the former category was preempted by the MLRL's supersession clause (*id.* at 133). In effect, local laws that purported to regulate the "how" of mining activities and operations were preempted whereas those limiting "where" mining could take place were not (*see id.* at 131).

We further determined that our plain language construction of the supersession clause in *Frew Run* was consistent with the MLRL as a whole and its legislative history—the second and third factors. We noted that the binary purposes of the MLRL were "to foster a healthy, growing mining industry" and to "aid in assuring that land damaged by mining operations is restored to a reasonably useful and attractive condition" (*id.* at 132 [internal quotation marks and citation omitted]), and that the legislative history reflected a goal of promoting the "mining industry by the adoption of standard and uniform restrictions and regulations to replace the existing patchwork system of local ordinances" (*id.* [internal quotation marks, brackets and citation omitted]). From the statutory scheme and legislative history, we discerned that the "sole purpose" of the supersession clause was to prevent localities from enacting ordinances "dealing with the actual operation and process of mining" because such laws would "frustrate the statutory purpose of encouraging mining through standardization of regulations pertaining to mining operations" (*id.* at 133). In contrast, zoning laws restricting the location of mining operations within a town fell outside the preemptive orbit of the clause because "nothing in the Mined Land Reclamation Law or its history

. . . suggests that its reach was intended to be broader than necessary to preempt conflicting regulations dealing with mining operations and reclamation of mined lands" (*id.*).

Guided by these principles, we now apply *Frew Run*'s three-part inquiry to the OGSML's supersession clause.

### (1) Plain Language

The first factor in assessing whether a supersession provision preempts local control over land use requires us to examine the words of the clause itself. And because the text of a statutory provision "is the clearest indicator of legislative intent" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]), this factor is most important.

The operative text of the OGSML's supersession clause is quite close to the provision we analyzed in *Frew Run*, preempting local laws "relating to the regulation of the oil, gas and solution mining industries" (ECL 23-0303 [2]; *compare* ECL 23-2703 [former (2)] [preempting local laws "relating to the extractive mining industry"]). Based on the similarities between the two state statutes, we decline the invitation of Norse and CHC to ascribe a broader meaning to the language used in the OGSML. To the contrary, the distinction we drew in *Frew Run* applies with equal force here, such that ECL 23-0303 (2) is most naturally read as preempting only local laws that purport to regulate the actual operations of oil and gas activities, not zoning ordinances that restrict or prohibit certain land uses within town boundaries. Plainly, the zoning laws in these cases are directed at regulating land use generally and do not attempt to govern the details, procedures or operations of the oil and gas industries. Although the zoning laws will undeniably have an impact on oil and gas enterprises, as in *Frew Run*, "this incidental control resulting from the municipality's exercise of its right to regulate land use through zoning is not the type of regulatory enactment relating to the [oil, gas and solution mining industries] which the Legislature could have envisioned as being within the prohibition of the statute" (*Frew Run*, 71 NY2d at 131).

Nevertheless, Norse and CHC, relying on the secondary clause in the OGSML's supersession provision—preserving "local government jurisdiction over local roads or the rights of local governments under the real property tax law" (ECL 23-0303 [2])—contend that the operative text cannot be limited to local laws that purport to regulate the actual operations of oil and

gas companies. They submit that the secondary clause's exemption of local jurisdiction over roads and taxes makes sense only if the preemptive span of the operative text is broader than we have allowed because roads and taxes are not associated with "operations." Consequently, they argue that there would have been no need for the legislature to exclude them from the operative language if supersession was limited to local laws aimed at oil and gas operations.

We find this textual argument misplaced because local regulation of roads and taxes can fairly be characterized as touching on the operations of the oil and gas industries and would have been preempted absent the secondary savings clause. The state legislature's decision to preserve "local government jurisdiction over local roads" was appropriate given the heavy truck and equipment traffic typically associated with oil and gas production, including water and wastewater hauling. Local laws dictating the number of daily truck trips or the weight and length of vehicles bear directly on industry operations and would otherwise be preempted absent the secondary clause. Similarly, the preservation of "the rights of local governments under the real property tax law" must be read in conjunction with section 594 of the Real Property Tax Law, which allows municipalities to impose taxes on oil and gas businesses. Because these special taxes are based on the level of production, they can be viewed as affecting the operations of the oil and gas industry, such that it was reasonable for the legislature to carve out an exception from the preemptive scope of the operative text. We are therefore unpersuaded by the claim of Norse and CHC that the plain language of ECL 23-0303 (2) as a whole supports preemption of the Towns' zoning laws.[4]

---

4. Norse and CHC also assert that we should not follow *Frew Run* because of a difference between the language used in the supersession clause in that case and the OGSML's supersession provision. They point out that the savings portion of the MLRL clause discussed in *Frew Run* explicitly preserved the ability of municipalities to enact "local zoning ordinances" (ECL 23-2703 [former (2)]) and contend that, had the legislature intended to reserve local zoning powers in the OGSML's supersession clause, it would have similarly included those powers in the secondary exemption language. But Norse's and CHC's position does not withstand closer scrutiny. The savings clause in *Frew Run* did not broadly protect all local zoning laws; rather, it reserved only "local zoning ordinances or other local laws which impose *stricter mined land reclamation standards* or requirements than those found [in the MLRL]" (ECL 23-2703 [former (2)] [emphasis added]). In *Frew Run*, we explained that

748

Indeed, it is instructive to compare the OGSML's supersession clause to other statutes that clearly preempt home rule zoning powers. Unlike ECL 23-0303 (2), such provisions often explicitly include zoning in the preemptive language employed by the legislature (*see e.g.* ECL 27-1107 [prohibiting municipalities from requiring "any approval, consent, permit, certificate or other condition including conformity with local zoning or land use laws and ordinances" for the siting of hazardous waste facilities]; Mental Hygiene Law § 41.34 [f] ["A community residence established pursuant to this section and family care homes shall be deemed a family unit, for the purposes of local laws and ordinances"]; Racing, Pari-Mutuel Wagering and Breeding Law § 1366 ["Notwithstanding any inconsistent provision of law, gaming authorized at a location pursuant to this article shall be deemed an approved activity for such location under the relevant city, county, town, or village land use or zoning ordinances, rules, or regulations"]).

Further, the legislative schemes of which these preemption clauses are a part typically include other statutory safeguards that take into account local considerations that otherwise would have been protected by traditional municipal zoning powers (*see e.g.* ECL 27-1103 [2] [g] [requiring the Department of Environmental Conservation to consider the "impact on the municipality where the facility is to be sited in terms of health, safety, cost and consistency with local planning, zoning or land use laws and ordinances"]; Mental Hygiene Law § 41.34 [c] [allowing municipalities a means of objecting to the placement of community residential facilities]; Racing, Pari-Mutuel Wagering and Breeding Law § 1320 [2] [mandating the consideration of local impacts and community support in the siting of gaming facilities]). Norse and CHC are unable to point to any comparable measures in the OGSML that account for the salient local interests in the context of drilling and hydrofracking activities.

although the preemptive reach of the operative text precluded any local law purporting to regulate the operations of *mining* activities, the limited carve-out allowed municipalities to adopt more stringent requirements for distinct *reclamation* operations, a result that was "consistent with the statute's overall aim of protecting the environment" (*Frew Run*, 71 NY2d at 133). Contrary to the suggestion of Norse and CHC, we did not uphold the town's zoning restriction in *Frew Run* based on the secondary savings clause—it did not fall within that provision because it was not aimed at reclamation projects. Rather, we held more generally that the preemptive text simply did not encompass the zoning law in the first place. So too with the operative portion of the OGSML's supersession provision.

In sum, the plain language of ECL 23-0303 (2) does not support preemption with respect to the Towns' zoning laws.

## (2) Statutory Scheme

The second factor relevant to discerning whether a supersession clause preempts local zoning powers involves an assessment of the clause's role in the statutory framework as a whole. We therefore turn to the OGSML—article 23 of the Environmental Conservation Law.

The stated purposes of the OGSML are fourfold: (i) "to regulate the development, production and utilization of natural resources of oil and gas in this state in such a manner as will prevent waste"; (ii) "to authorize and to provide for the operation and development of oil and gas properties in such a manner that a greater ultimate recovery of oil and gas may be had"; (iii) to protect the "correlative rights of all owners and the rights of all persons including landowners and the general public"; and (iv) to regulate "the underground storage of gas, the solution mining of salt and geothermal, stratigraphic and brine disposal wells" (ECL 23-0301).

In furtherance of these goals, the OGSML sets forth a detailed regime under which the New York State Department of Environmental Conservation is entrusted to regulate oil, gas and solution mining activities and to promulgate and enforce appropriate rules. In particular, the Department is empowered to "[r]equire the drilling, casing, operation, plugging and replugging of wells and reclamation of surrounding land in accordance with the rules and regulations of the department" (ECL 23-0305 [8] [d]); enter and plug or replug abandoned wells when the owner has violated Department regulations (ECL 23-0305 [8] [e]); compel operators to furnish the Department with a bond to ensure compliance (ECL 23-0305 [8] [k]); order the immediate suspension of drilling operations that are in violation of Department regulations (ECL 23-0305 [8] [g]); require operators to file well logs and samples with the Department (ECL 23-0305 [8] [i]); grant well permits for oil and gas drilling (ECL 23-0501); issue orders governing the appropriate spacing between oil and gas wells to promote efficient drilling and prevent waste (ECL 23-0503); oversee the integration of oil and gas fields to prevent waste (ECL 23-0701, 23-0901); execute leases on behalf of the State for oil and gas exploration and production (ECL 23-1101); and issue permits for underground storage reservoirs (ECL 23-1301).

Based on these provisions, it is readily apparent that the OGSML is concerned with the Department's regulation and authority regarding the safety, technical and operational aspects of oil and gas activities across the State. The supersession clause in ECL 23-0303 (2) fits comfortably within this legislative framework since it invalidates local laws that would intrude on the Department's regulatory oversight of the industry's operations, thereby ensuring uniform exploratory and extraction processes related to oil and gas production. Similar to the scope of the MLRL in *Frew Run*, we perceive nothing in the various provisions of the OGSML indicating that the supersession clause was meant to be broader than required to preempt conflicting local laws directed at the technical operations of the industry.

And contrary to the position advanced by Norse and CHC, we see no inconsistency between the preservation of local zoning authority and the OGSML's policies of preventing "waste" and promoting a "greater ultimate recovery of oil and gas" (ECL 23-0301), or the statute's spacing provisions for wells (*see* ECL 23-0501, 23-0503). Waste is used as a term of art in the OGSML meaning, among other things, the "inefficient, excessive or improper use of, or the unnecessary dissipation of reservoir energy" and the "locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner which causes or tends to cause reduction in the quantity of oil or gas ultimately recoverable" (ECL 23-0101 [20] [b], [c]). The OGSML's overriding concern with preventing waste is limited to inefficient or improper drilling activities that result in the unnecessary waste of natural resources. Nothing in the statute points to the conclusion that a municipality's decision not to permit drilling equates to waste. The OGSML's related goal of ensuring a "greater ultimate recovery" and its well-spacing provisions—designed to limit the number of wells that may be drilled into an underground pool of oil or gas—are likewise directly related to the concept of waste prevention and do not compel a different result. As the Appellate Division below aptly observed in the *Dryden* case:

> "the well-spacing provisions of the OGSML concern technical, operational aspects of drilling and are separate and distinct from a municipality's zoning authority, such that the two do not conflict, but rather, may harmoniously coexist; the zoning law will dictate in which, if any, districts drilling may occur, while the OGSML instructs operators as to

the proper spacing of the units within those districts in order to prevent waste" (108 AD3d at 37).

Consequently, our interpretation of the OGSML's supersession clause is consistent with the overarching statutory structure.[5]

### (3) Legislative History

The third and final factor for review in deciding whether the supersession clause preempts local zoning powers requires that we examine the OGSML's legislative history.

The roots of the OGSML extend back to the Interstate Compact to Conserve Oil and Gas, a multi-state agreement created in 1935 and sanctioned by Congress to address the national problem of overproduction of oil and gas pools and the resulting waste caused by unchecked, unspaced and inefficient drilling. In 1941, New York joined the Interstate Compact, whose sole purpose was "to conserve oil and gas by the prevention of physical waste thereof from any cause" (ECL 23-2101 [codification of the Interstate Compact]). More than 20 years later, in conjunction with New York's participation in the Interstate Compact, the state legislature enacted a comprehensive statutory framework for promoting the conservation of oil and gas resources—the forerunner to the OGSML—in section 70 *et seq.* of the former Conservation Law (L 1963, ch 959). As originally enacted, the statute's stated policy was, in part, "to foster, encourage and promote the development, production and utilization of natural resources of oil and gas in this state in such a manner as will prevent waste" (former Conservation Law § 70).[6]

In 1978, the state legislature amended the OGSML to modify its policy by replacing the phrase *"to foster, encourage and*

----

**5.** Norse and CHC also claim that the OGSML's policy of protecting correlative rights (*see* ECL 23-0301) militates in favor of a broader reading of the supersession clause. But the concept of correlative rights—under which "each landowner is entitled to be compensated for the production of the oil or gas located in the pool beneath his or her property regardless of the location of the well that effects its removal"—is not synonymous with the right to drill (*Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.*, 26 AD3d 15, 17 [3d Dept 2005]). Moreover, our reading of the supersession clause is in accord with ECL 23-0301's stated purpose of ensuring the rights of the "general public."

**6.** In 1972, the relevant portions of the Conservation Law were replaced with the Environmental Conservation Law, and section 70 *et seq.* of the Conservation Law was recodified at section 23-0101 *et seq.* of the Environmental Conservation Law (L 1972, ch 664, § 2). A year later, the statutory regime was denominated the OGSML by the legislature (L 1973, ch 922, § 2; *see also* ECL 23-0102).

*promote* the development, production and utilization of natural resources of oil and gas in this state in such a manner as will prevent waste" with "*to regulate* the development, production and utilization of natural resources of oil and gas in this state in such a manner as will prevent waste" (ECL 23-0301, as amended by L 1978, ch 396, § 1 [emphasis added]). The legislation also transferred the task of encouraging and promoting the prudent development of New York's energy resources to the Energy Law (*see* Energy Law § 3-101, as amended by L 1978, ch 396, § 2) for the purpose of establishing "the Energy Office as the State agency primarily responsible for promoting the development of energy resources" and removing "such promotional responsibilities from the Department of Environmental Conservation which would, however, retain regulatory responsibilities over such resources" (Governor's Program Bill Mem at 1, Bill Jacket, L 1978, ch 396).

Subsequently, the supersession clause at issue was adopted by the state legislature in 1981 in conjunction with amendments to various statutes such as the Finance Law, the ECL and the Real Property Tax Law (L 1981, ch 846). The 1981 amendments also imposed new drilling fees (*see* ECL 23-1903, as added by L 1981, ch 846, § 14), created monetary sanctions for violations of the OGSML (*see* ECL 71-1307, as added by L 1981, ch 846, § 17), and set up an oil and gas fund. The legislative history reflects that, prior to the amendments, the Department of Environmental Conservation had been unable "to effectively regulate and service the industry" because recent growth in drilling had exceeded the Department's capabilities (Sponsor's Mem at 2, Bill Jacket, L 1981, ch 846). Explaining that the Department was finding it difficult to fulfill its "regulatory responsibilities" under its existing funding and powers, Governor Hugh Carey confirmed that the amendments were needed to provide the Department with the monies required to implement its "updated regulatory program" as well as "additional enforcement powers necessary to enable it to provide for the efficient, equitable and environmentally safe development of the State's oil and gas resources" (Governor's Approval Mem at 1-2, Bill Jacket, L 1981, ch 846). The legislative history, however, sheds no additional light on the supersession clause, referencing it only once with no elaboration (*see* Budget Report on Bills at 1, Bill Jacket, L 1981, ch 846 ["The existing and amended oil and gas law would supersede all local laws or ordinances regulating the oil, gas, and solution mining industries"]).

Nothing in the legislative history undermines our view that the supersession clause does not interfere with local zoning laws regulating the permissible and prohibited uses of municipal land. Indeed, the pertinent passages make no mention of zoning at all, much less evince an intent to take away local land use powers. Rather, the history of the OGSML and its predecessor makes clear that the state legislature's primary concern was with preventing wasteful oil and gas practices and ensuring that the Department had the means to regulate the technical operations of the industry.

In sum, application of the three *Frew Run* factors—the plain language, statutory scheme and legislative history—to these appeals leads us to conclude that the Towns appropriately acted within their home rule authority in adopting the challenged zoning laws. We can find no legislative intent, much less a requisite "clear expression," requiring the preemption of local land use regulations.

## III.

As a fallback position, Norse and CHC suggest that, even if the OGSML's supersession clause does not preempt all local zoning laws, it should be interpreted as preempting zoning ordinances, like the two here, that completely prohibit hydrofracking. In their view, supported by the dissent, it may be valid to restrict oil and gas operations from certain residential areas of a town—much like the zoning law in *Frew Run*—but an outright ban goes too far and cannot be seen as anything but a local law that regulates the oil and gas industry, thereby running afoul of the supersession clause. But this contention is foreclosed by *Matter of Gernatt Asphalt Prods. v Town of Sardinia* (87 NY2d 668 [1996]), our decision following *Frew Run*.

In *Gernatt*—decided after the legislature had codified *Frew Run*'s holding in an amendment to the MLRL's supersession clause—the Town of Sardinia amended its zoning ordinance to eliminate all mining as a permitted use throughout the town. A mining company challenged the zoning law under the MLRL's supersession clause and, in an argument mirroring the one advanced by Norse and CHC, asserted that *Frew Run* left "municipalities with the limited authority to determine in *which* zoning districts mining may be conducted but not the authority to prohibit mining in *all* zoning districts" (*Gernatt*, 87 NY2d at 681). We squarely rejected this cramped reading of *Frew Run*, reiterating that "zoning ordinances are not the type of regula-

tory provision the Legislature foresaw as preempted by the Mined Land Reclamation Law; the distinction is between ordinances that regulate property uses and ordinances that regulate mining activities" (*id.* at 681-682 [emphasis omitted]). We held that nothing in *Frew Run* or the MLRL obligated a town that "contains extractable minerals . . . to permit them to be mined somewhere within the municipality" (*id.* at 683). Put differently, in a passage that has particular resonance here, we explained:

> "A municipality is not obliged to permit the exploitation of any and all natural resources within the town as a permitted use if limiting that use is a reasonable exercise of its police powers to prevent damage to the rights of others and to promote the interests of the community as a whole" (*id.* at 684).

Manifestly, Dryden and Middlefield engaged in a reasonable exercise of their zoning authority as contemplated in *Gernatt* when they adopted local laws clarifying that oil and gas extraction and production were not permissible uses in any zoning districts. The Towns both studied the issue and acted within their home rule powers in determining that gas drilling would permanently alter and adversely affect the deliberately-cultivated, small-town character of their communities. And contrary to the dissent's posture, there is no meaningful distinction between the zoning ordinance we upheld in *Gernatt*, which "eliminate[d] mining as a permitted use" in Sardinia (*id.* at 683), and the zoning laws here classifying oil and gas drilling as prohibited land uses in Dryden and Middlefield. Hence, Norse's and CHC's position that the town-wide nature of the hydrofracking bans rendered them unlawful is without merit, as are their remaining contentions.

## IV.

At the heart of these cases lies the relationship between the State and its local government subdivisions, and their respective exercise of legislative power. These appeals are not about whether hydrofracking is beneficial or detrimental to the economy, environment or energy needs of New York, and we pass no judgment on its merits. These are major policy questions for the coordinate branches of government to resolve. The discrete issue before us, and the only one we resolve today, is whether the state legislature eliminated the home rule capacity of municipalities to pass zoning laws that exclude oil, gas and

hydrofracking activities in order to preserve the existing character of their communities. There is no dispute that the state legislature has this right if it chooses to exercise it. But in light of ECL 23-0303 (2)'s plain language, its place within the OGSML's framework and the legislative background, we cannot say that the supersession clause—added long before the current debate over high-volume hydrofracking and horizontal drilling ignited—evinces a clear expression of preemptive intent. The zoning laws of Dryden and Middlefield are therefore valid.

Accordingly, in each case, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). Environmental Conservation Law § 23-0303 (2) states that "[t]he provisions of this article shall supersede *all* local laws or ordinances *relating* to the regulation of the oil, gas and solution mining industries; but shall not supersede local government jurisdiction over local roads or the rights of local governments under the real property tax law" (emphasis supplied). Municipalities may without a doubt regulate land use through enactment of zoning laws, but, in my view, the particular zoning ordinances in these cases relate to the regulation of the oil, gas and solution mining industries and therefore encroach upon the Department of Environmental Conservation's regulatory authority. For this reason, I respectfully dissent.

The zoning ordinances of Dryden and Middlefield do more than just regulate land use, they regulate oil, gas and solution mining industries under the pretext of zoning (*see* Zoning Ordinance of Town of Dryden § 2104 [1] ["Prohibited Uses (1) Prohibition against the Exploration for or Extraction (of) Natural Gas and/or Petroleum"]; Zoning Ordinance of Town of Middlefield art II [B] [7]; art V [A] ["Prohibited Uses: Heavy industry and all oil, gas or solution mining and drilling are prohibited uses"]).

In *Matter of Frew Run Gravel Prods. v Town of Carroll* (71 NY2d 126 [1987])—a case involving a supersession clause contained in the Mined Land Reclamation Law (MLRL) (*see* former ECL 23-2703 [2])*—we made clear that there is a distinction between zoning ordinances that regulate land use and local

---

* This statute provided that the MLRL "shall supersede all other state and local laws relating to the extractive mining industry, provided, however, that nothing in this title shall be construed to prevent any local government from enacting local ordinances or other local laws which impose stricter mined land reclamation standards or requirements than those found herein."

ordinances that regulate the mining industry. The former, which involve the division of the municipality into zones and the establishment of permitted uses within those zones, relate not to the extractive mining industry, but rather, to the regulation of land use generally (*see Frew Run*, 71 NY2d at 131).

The ordinances here, however, do more than just "regulate land use generally" (*id.*), they purport to regulate the oil, gas and solution mining activities within the respective towns, creating a blanket ban on an entire industry without specifying the zones where such uses are prohibited. In light of the language of the zoning ordinances at issue—which go into great detail concerning the prohibitions against the storage of gas, petroleum exploration and production materials and equipment in the respective towns—it is evident that they go above and beyond zoning and, instead, regulate those industries, which is exclusively within the purview of the Department of Environmental Conservation. In this fashion, prohibition of certain activities is, in effect, regulation.

Unlike the situation in *Matter of Gernatt Asphalt Prods. v Town of Sardinia* (87 NY2d 668 [1996])—which involved a zoning ordinance that eliminated mining as a permitted use in all districts—the ordinances in these appeals do more than just delineate prohibited uses. Where zoning ordinances encroach upon the DEC's regulatory authority and extend beyond the municipality's power to regulate land use generally, the ordinances have run afoul of ECL 23-0303 (2).

Chief Judge Lippman and Judges Read, Rivera and Abdus-Salaam concur with Judge Graffeo; Judge Pigott dissents in an opinion in which Judge Smith concurs.

In each case: Order affirmed, with costs.